757 F.2d 1035
 12 Collier Bankr.Cas.2d 845, Bankr. L. Rep. P 70,371
In re Edward Hill LOVITT, wwi Ermie Lovitt, Debtor.
Gordon H. CHEADLE and Patricia J. Cheadle, husband and wife,
Appellants,
v.
APPLEATCHEE RIDERS ASSOCIATION; Cyprus Mines Corporation,
and Asamera Minerals (U.S.), Inc., Appellees.
APPLEATCHEE RIDERS ASSOCIATION; Cyprus Mines Corporation;
and Asamera Minerals (U.S.), Inc., Cross-Appellants,
v.
Gordon H. CHEADLE and Patricia J. Cheadle, husband and wife,
Cross-Appellees.
Sheena R. AEBIG, Successor-Trustee of Lovitt Bankruptcy
Estate, Appellant,
v.
Gordon H. CHEADLE and Patricia J. Cheadle, husband and wife;
Appleatchee Riders Association; Cyprus Mines
Corporation; and Asamera Minerals
(U.S.), Inc., Appellees.
 Nos. 84-4057, 84-4103 and 84-4267.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1985.
Decided April 9, 1985.
As Amended on Denial of Rehearing May 10, 1985.
 
 Patrick W. Crowley, Siderius, Lonergran & Crowley, Seattle, Wash., for appellants.
 Michael A. Small, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., for appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before FARRIS, ALARCON, and FERGUSON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Appellants Gordon H. Cheadle (hereinafter Cheadle) and Patricia J. Cheadle appeal from the district court's order vacating the trustee sale to Cheadle of two mining leases previously owned by the debtor-in-bankruptcy, Edward Hill Lovitt. Appellant Sheena R. Aebig joins the Cheadles' appeal and further appeals from the portion of the district court's order which requires her, as successor trustee of Lovitt's estate, to return the consideration paid by Cheadle for the leaseholds. Appellees Appleatchee Riders Association (hereinafter Appleatchee), Cyprus Mines Corporation (hereinafter Cyprus), and Asamera Minerals (U.S.), Inc. (hereinafter Asamera), who have ownership interests in the property covered by the leases,[1] cross-appeal from the district court's ruling striking the affidavit of Michael A. Small containing excerpts of the deposition testimony of Cheadle and Aebig. Appellees also move to strike Aebig's appeal on the ground that it was not timely filed.
 
 
 2
 * PERTINENT FACTS AND PROCEDURAL HISTORY
 
 
 3
 Edward Hill Lovitt filed for bankruptcy under Chapter 7 on behalf of himself and his wife on September 21, 1973, in the Bankruptcy Court for the Western District of Washington. This appeal concerns the fate of two mineral leases which named Lovitt as lessee. The first was executed on March 5, 1964 by Lovitt and lessors Stanley and Zena Chappelle and Maggie Riggs (hereinafter the Chappelle/Riggs lease). The second was executed on March 19, 1964 by Lovitt and lessors Mark and Mabel Leavers (hereinafter the Leavers lease). Both leases were unexpired on the date that Lovitt filed for bankruptcy, but Lovitt failed to list either lease on his schedule of assets.
 
 
 4
 On October 11, 1973, the bankruptcy court appointed Fred Galer as Lovitt's trustee-in-bankruptcy. Although both leases had been duly recorded under Lovitt's name in Wenatchee, Washington (where the property was located and where Galer's investigation of Lovitt's affairs occurred), Galer took no action to assume the leases, nor did he tender payment of the accrued and unpaid back rentals owing on the leases. Lovitt's estate was closed on January 30, 1978.
 
 
 5
 Cheadle, who had been involved in the Lovitt bankruptcy from its inception as a creditor and as a purchaser of assets, filed an ex parte petition to reopen the bankruptcy on November 21, 1980, on the ground that unscheduled assets belonging to Lovitt had been discovered after the close of his estate. The petition did not list the two subject leases. Service of the petition to reopen was not made upon Appleatchee or Cyprus, who had by then succeeded to interests in the property covered by the leases.
 
 
 6
 The bankruptcy was reopened and Sheena Aebig was appointed successor trustee on November 25, 1980. On February 2, 1981, Cheadle provided Aebig with copies of both leases. Aebig took no action to assume the leases or to pay the accrued rentals. Instead, on July 30, 1981, Aebig obtained an ex parte order from the bankruptcy court authorizing her to sell without warranty her rights to the leases.
 
 
 7
 A notice of sale was filed on August 6, 1981, but was not served on Appleatchee or Cyprus. The sale was held on September 24, 1981. There were two bidders: Cheadle and Asamera. Aebig accepted Cheadle's bid and obtained ex parte orders confirming the sale of the leases to Cheadle on September 29, 1981, and October 22, 1981.
 
 
 8
 In September 1982, Cheadle commenced quiet title actions pertaining to the leaseholds in state court against Appleatchee, Cyprus and Asamera. On January 26, 1984, appellees moved to vacate the bankruptcy court's order confirming the sale of the leases to Cheadle. The bankruptcy court denied the motion to set aside the sale by order dated February 27, 1984.
 
 
 9
 Appellees appealed to the district court, and on July 11, 1984, the district court reversed the decision of the bankruptcy court and vacated the order confirming sale. The district court also ordered trustee Aebig to return the consideration paid by Cheadle for the leases. Cheadle's motion for reconsideration was denied by the court's order on September 7, 1984.
 
 
 10
 Cheadle filed a notice of appeal from the district court's original order on August 6, 1984, and an amended notice of appeal from both the original order and the order on the motion for reconsideration on September 21, 1984. Appellees filed a timely cross-appeal from the district court's order striking the affidavit of Michael A. Small. Trustee Aebig filed a notice of appeal from the court's ruling on the motion for reconsideration on October 3, 1984. Appellees filed a motion to dismiss Aebig's appeal as untimely on October 31, 1984. All appeals were consolidated by order of this court on November 29, 1984.
 
 II
 TRUSTEE AEBIG'S APPEAL
 
 11
 Appellees contend that Aebig's appeal is untimely because it was not filed within thirty days from entry of the district court's July 11, 1984 order. Aebig argues that Cheadle's motion for reconsideration extended the time to file her notice of appeal until thirty days from entry of the district court's September 7, 1984 order.
 
 
 12
 Federal Rule of Appellate Procedure 4(a)(4) provides that the thirty day period for the filing of a notice of appeal does not begin to run until after the disposition of certain enumerated post-judgment motions. Cheadle's motion for reconsideration does not fit within any of the categories singled out in the Rule for special treatment. As appellees point out, Cheadle's motion is most properly characterized as a motion for rehearing under Bankruptcy Rule 8015. The Advisory Committee's note to Rule 8015 observes that the filing of a motion for rehearing does not toll the time for taking an appeal from a district court's judgment. See also Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557 (1937) (bankruptcy court's refusal to entertain motion for rehearing does not extend time for filing appeal; defeated party who does not file a timely appeal takes the risk that he may lose his right of appeal).
 
 
 13
 The time limits for filing a notice of appeal are "mandatory and jurisdictional." United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960). Because Cheadle's motion for reconsideration did not extend the time for appeal from the district court's July 11 order, Aebig's failure to file her appeal within thirty days of July 12, 1984, the date of entry of the district court's order, deprives this court of jurisdiction to hear her appeal.
 
 III
 APPELLEES' STANDING
 
 14
 Cheadle challenges appellees' standing to invoke the bankruptcy court's jurisdiction, arguing that (1) appellees are strangers to the sale of the leaseholds, and (2) Asamera cannot attack the validity of the judicial sale because it was an unsuccessful bidder for the leases. We reject both challenges.
 
 
 15
 In Allen v. Wright, --- U.S. ----, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the Supreme Court reaffirmed the essential constitutional component of standing: the plaintiff must allege personal injury "fairly traceable to the defendant's allegedly unlawful conduct" which is "likely to be redressed by the requested relief." Id. at 3325 (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). The injury alleged must be actual or threatened injury suffered personally by the plaintiff. Valley Forge, supra, at 472, 102 S.Ct. at 758.
 
 
 16
 In the present case, appellees plainly are aggrieved parties with standing to challenge the bankruptcy court's order. Their alleged injury is the cloud cast upon their title to the property covered by the leases. Such injury is a direct result of the bankruptcy court's order confirming title in Cheadle, and could be remedied by an order vacating the sale.[2]
 
 
 17
 Furthermore, where a non-party claims an interest in property which is affected by a judgment between others, the non-party may seek a determination that the judgment does not cloud his title. This principle is clearly set forth in the Restatement (Second) of Judgments Sec. 76 (1980), and the Reporter's comment thereto:
 
 
 18
 [A] person who is not bound by a judgment under the rules of res judicata may obtain a determination that the judgment is ineffective as to him ... when:
 
 
 19
 (1) the existence of the judgment jeopardizes a protectible interest of his; and
 
 
 20
 (2) the character of his interest warrants his being given relief forthwith.
 
 
 21
 ....
 
 
 22
 The plainest case is a judgment between others that determines interests in property in which the non-party claims an interest. The judgment suggests that the party in whose favor it runs has some sort of valid interest in the property. This may cloud the non-party's title....
 
 
 23
 This court has often looked to the Restatement of Judgments for guidance. See, e.g., In re Houtman, 568 F.2d 651, 653 n. 2 (9th Cir.1978) (citing the Restatement of Judgments with approval and applying it to a bankruptcy appeal).
 
 
 24
 Finally, we need not address Cheadle's contention that as a mere unsuccessful bidder at the judicial sale of the leases, Asamera lacks standing to challenge the validity of the sale. Appellees' brief makes clear that Asamera makes its claim solely in its capacity as a successor-in-interest to Cyprus and Appleatchee. Asamera does not raise any challenge to the technical propriety of the sale based upon the rejection of its bid.
 
 IV
 
 25
 APPLICABILITY OF FEDERAL RULE OF CIVIL PROCEDURE 60(B) TO
 
 APPELLEES' MOTION TO VACATE
 
 26
 Cheadle further contends that Fed.R.Civ.P. 60(b) bars appellees' motion to vacate the bankruptcy court's order because the motion was made more than one year after entry of the order. We find that the plain language of Rule 60(b) renders it inapplicable to appellees' motion to vacate, and that even if it were applicable it would not bar appellees' motion.
 
 
 27
 Rule 60(b) provides a procedural mechanism for relief from a judgment on motion by "a party or his legal representative." Thus, a Rule 60(b) motion is maintainable only by a party (or his privy) to the original action. See National Acceptance Co. v. Frigidmeats, Inc., 627 F.2d 764, 766 (7th Cir.1980); Ratner v. Bakery & Confectionery Workers International Union, 394 F.2d 780, 782 (D.C.Cir.1968); United States v. 140.80 Acres of Land, 32 F.R.D. 11, 14 (E.D.La.1963). Because appellees were not parties to the ex parte proceedings in which the trustee sale of the leases was authorized and confirmed, Fed.R.Civ.P. 60(b) does not govern their motion to vacate the bankruptcy court's order.
 
 
 28
 Moreover, even if Rule 60(b) were applicable, its operation would not preclude appellees' motion to vacate. Cheadle apparently contends that appellees' motion was made upon one of the grounds specified in Rule 60(b)(1), (2), or (3), and is therefore subject to the one-year limitations period specified in the Rule for motions made upon those grounds. We disagree. As a motion to vacate a void judgment, appellees' motion was made pursuant to Fed.R.Civ.P. 60(b)(4) and is not subject to the one-year limitations period; a motion to vacate a void judgment can be made at any "reasonable time." Fed.R.Civ.P. 60(b); 7 Moore's Federal Practice p 60.25, at 60-241 (2d ed. 1983). Appellees' motion was filed within a reasonable time in light of Cheadle's failure to provide them with notice of the reopening of the Lovitt estate and the sale of the leases. Therefore, appellees' motion is not barred by the limitations period of Rule 60(b).
 
 V
 
 29
 APPLICABILITY OF SECTION 110(B) AND BANKRUPTCY RULE 607 TO
 
 UNSCHEDULED ASSETS
 
 30
 The pivotal question on this appeal is whether the leases ever became a part of Lovitt's estate subject to the bankruptcy court's jurisdiction. Resolution of this issue requires us to determine the applicability of section 70(b) of the Bankruptcy Act, 11 U.S.C. Sec. 110(b) (1970) and Bankruptcy Rule 607 to a bankrupt's unscheduled unexpired leases.[3] We hold that a trustee has an affirmative duty to investigate for unscheduled executory contracts or unexpired leases, and that the statutory presumption of rejection of leases which are not assumed within sixty days from the date of the trustee's qualification is conclusive. Accordingly, trustee Aebig's failure to assume the unscheduled leases within sixty days from the date of her qualification resulted in rejection of the leases.
 
 
 31
 Section 70(b) of the Bankruptcy Act provides, in pertinent part:
 
 
 32
 The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected.
 
 
 33
 The Act is modified by Bankruptcy Rule 607, which eliminates the date of adjudication as a triggering event for applying the presumption of rejection and refers exclusively to the date of the trustee's qualification. Rule 607 provides in relevant part as follows:
 
 
 34
 Within thirty days after the qualification of the trustee, unless the court for cause shown extends or reduces the time, the trustee shall file a statement showing any executory contracts of the bankrupt, including unexpired leases, which the trustee has assumed.... Any such contract not assumed within sixty days after qualification of the trustee or within such further or reduced time as the court may allow within such sixty day period, shall be deemed to be rejected.
 
 
 35
 The trustee's power to reject those executory contracts which he finds burdensome to the bankrupt's estate is an extension of his power to renounce title to and abandon burdensome property which is already a part of the estate. See 4A Collier on Bankruptcy p 70.43, at 516-17 (14th ed. 1978). Because executory contracts and leases involve future liabilities as well as rights, however, an affirmative act of assumption by the trustee is required to bring the property into the estate in order to ensure that the estate is not charged with the liabilities except upon due deliberation. See In re Frazin, 183 Fed. 28, 32 (2d Cir.1910); 4A Collier on Bankruptcy p 70.43, at 520 (14th ed. 1978). Thus, executory contracts and leases--unlike all other assets--do not vest in the trustee as of the date of the filing of the bankruptcy petition. They vest only upon the trustee's timely and affirmative act of assumption. In re Tonry, 724 F.2d 467, 469 (5th Cir.1984); In re Cochise College Park, Inc., 703 F.2d 1339, 1352 (9th Cir.1983); Fletcher v. Surprise, 180 F.2d 669, 676 (7th Cir.), cert. den., 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605 (1950).
 
 
 36
 Because rejection of an executory contract is retroactive to the date of the filing of the bankruptcy petition, such a contract never becomes a part of the bankrupt's estate. In re Tonry, supra, at 469; In re Cochise College Park, Inc., supra, at 1352; Danning v. Brunswick Corp., 466 F.2d 1010, 1012 (9th Cir.1972), cert. denied 409 U.S. 1126, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); Fletcher v. Surprise, supra, at 676. A bankruptcy court has no jurisdiction over assets outside of the bankrupt's estate, and therefore lacks authority to approve their sale or transfer. United States v. Neiwirth, 370 F.Supp. 929, 934 (D.N.J.1974).
 
 
 37
 In the present case, it is undisputed that the unexpired leases fall within the purview of section 110(b) and Rule 607, and that trustees Galer and Aebig took no action to assume the leases within sixty days of their respective qualification dates. Therefore, both leases were rejected by operation of the statutes and the bankruptcy court was without jurisdiction to enter its order confirming the trustee sale. The district court's holding to this effect is directly supported by In re Gravure Paper & Board Corp., 234 F.2d 928 (3d Cir.1956), which we cited approvingly in In re Cochise College Park, Inc., supra, at 1351 n. 10, 1352, 1356. Gravure made clear that once a trustee rejects a lease, he no longer has any right, title or interest in the lease or its proceeds. Gravure, supra, at 930, 932. Consequently, the sale of an unassumed lease is a nullity. Id.
 
 
 38
 Cheadle contends that section 110(b) and Rule 607 were not intended to apply to unscheduled leases. We disagree. The statutory presumption of rejection by the trustee's nonaction within the sixty day period following his qualification is a conclusive presumption. In re Gravure Paper & Board Corp., supra at 930; Fletcher v. Surprise, supra, at 675-76; In re Shipley, 29 B.R. 13, 15 (W.D.Ky.1983). Moreover, Bankruptcy Rule 607 imposes an affirmative duty on the trustee promptly to investigate the affairs of the bankrupt and to determine whether executory contracts or unexpired leases exist. In re Law, 1 B.R. 557, 559 (W.D.Va.1979). In the present case, the trustees' failure to discover the existence of appellees' recorded interests in the property covered by the leases does not exempt the leases from the operation of the statutory presumption of rejection.[4] Therefore, the failure of both trustees to take any action to assume these leases within sixty days after their respective qualification dates resulted in rejection, and the subsequent trustee sale of the leases was a nullity.
 
 VI
 
 39
 APPELLEES' CROSS-APPEAL FROM THE DISTRICT COURT'S EVIDENTIARY RULING
 
 
 40
 Because we find that there was no error in the district court's order reversing the bankruptcy court's order and vacating the sale of the leases to Cheadle, we need not reach appellees' cross-appeal from the district court's order striking the affidavit of Michael A. Small.
 
 
 41
 The judgment is AFFIRMED.
 
 
 
 [1]
 At the time of the sale, Cyprus was the successor lessor and fee owner of the real property originally included in one of the leases and Appleatchee was the successor lessor and fee owner of the property under the other lease. Subsequent to the sale, Asamera entered into agreements with Cyprus and Appleatchee relative to the properties and thereby became their successor-in-interest
 
 
 [2]
 Because Cheadle sought reconsideration in the district court rather than in the bankruptcy court, his motion was governed by Bankruptcy Rule 8015 rather than by Rule 8002(b); Rule 8002(b) applies to a motion for reconsideration in the bankruptcy court. Therefore, our decision in Branding Iron Steak House, 536 F.2d 299 (9th Cir. 1976) holding that a Rule 8002(b) motion to alter or amend a bankruptcy court's judgment tolls the time for appeal to the district court, is neither controlling nor applicable to the present case
 
 
 [3]
 Because the Lovitt bankruptcy petition was filed in 1973, this appeal is governed by the former Bankruptcy Act of 1898 as amended, 11 U.S.C. Sec. 1 et seq. (1970) and the Bankruptcy Rules thereunder, which were in effect at the time of such filing. Section 403(a) of the Bankruptcy Reform Act, Pub.L. No. 95-598, 92 Stat. 2549 (1978) provides that "[a] case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted." See also In re Cochise College Park, Inc., 703 F.2d 1339, 1344 n. 1 (9th Cir.1983)
 The analyses employed by courts in cases arising under section 365(d)(1) of the Bankruptcy Code are relevant to this discussion, however, because section 365(d)(1) contains an analagous provision which deems executory contracts and unexpired leases rejected if they are not assumed within a sixty day period from the date of the order for relief.
 
 
 [4]
 Appellees speculate that Galer's inaction resulted either from his conclusion that the leases were an asset of Wenatchee Mining Partnership, in which Lovitt retained no valuable interest at the time of the filing of the bankruptcy, or from his judgment that the rentals owing on the leases rendered them burdensome to the estate. There is no evidence, however, that Galer had actual knowledge of the leases within the sixty day period or that he made a conscious decision to reject them