In re CHANDEL ENTERPRISES, INC., a California corporation, Debtor.

CORPORATE PROPERTY INVESTORS, a Massachusetts Business Trust, Moving Party,

v.

CHANDEL ENTERPRISES, INC., a California corporation, Respondent.

Bankruptcy No. SA 86–00298 RP.
Ref. No. M6–0568 RP.

United States Bankruptcy Court, C.D. California.

July 9, 1986.

Thomas N. Jacobson of Gresham, Varner, Savave, Nolan & Tilden, San Bernardino, Cal., appeared on behalf of the moving party.

Roger A. Saevig of Law Offices of Roger A. Saevig, Irvine, Cal., appeared on behalf of the responding party.

OPINION

RALPH G. PAGTER, Bankruptcy Judge.

Corporate Property Investors' ("CPI" or "landlord") motions for relief from stay and to deem the subject lease rejected came on regularly for hearing on May 28, 1986. Thomas N. Jacobson ("Jacobson") appeared on behalf of the moving party. Roger A. Saevig ("Saevig") appeared on behalf of the debtor and respondent Chandel Enterprises, Inc. ("Chandel" or "debtor"). At the conclusion of the hearing, the matters were taken under submission. For the reasons stated below, both of CPI's motions are GRANTED.

## FACTS

On or about January 24, 1974 Chandel and CPI's predecessor-in-interest entered into a long-term lease for certain premises located in the Westminster Mall, a shopping center. An amendment agreed to in 1975 altered certain amounts due, but did not change the sixteen-year term.

On January 17, 1986, debtor filed its voluntary Chapter 11 petition. Debtor filed its schedules and Statement of Affairs on February 26, 1986. The Statement of Affairs indicates that the debtor conducts its business from the subject premises, and that CPI is landlord. CPI was listed on Schedule A–3 as a creditor that was owed $3,430.20. Although CPI was listed on the Supplement to the Master Mailing Matrix filed on February 26, CPI was not included in the original matrix filed along with the petition.

The court clerk served the Order for Meeting of Creditors Combined with Notice Thereof and of Automatic Stay on February 21, 1986 to those listed on the Master Mailing Matrix. CPI was not served with said notice. Debtor served CPI with its supplemental notice of stay, by mail, on February 24.

Michael Bagramian ("Bagramian") is president of the debtor corporation. Pembrook Management, Inc. ("Pembrook") is the agent that manages Westminster Mall for CPI. Roger McGonegal ("McGonegal") was and is a supervisor employed by Pembrook and was manager of the mall for all times mentioned herein.

Subsequent to debtor's filing its Chapter 11 petition, Bagramian and McGonegal had a number of conversations concerning rent due and owing to CPI. According to McGonegal, only one conversation occurred in February, in which the only topic of conversation was nonpayment of the January rent. McGonegal declares that Bagramian never mentioned that Chandel had filed for Chapter 11 relief. According to Bagramian, he spoke with McGonegal every week after the filing, and that he informed Bagramian of the filing and the debtor's intent to assume the lease. Alleg-

edly, McGonegal only expressed an interest in ensuring that the rent was timely paid.

On February 22, Bagramian tendered and McGonegal accepted a check for one month's rent. CPI asserts that McGonegal was unaware of the filing when he accepted the check.

Bagramian also declares that he informed McGonegal of debtor's intent to sell the business and assign the lease to the buyer. The purported prospective buyer already operates one store within the mall. Bagramian further declares that McGonegal indicated that all paperwork regarding the sale was to "go through him". McGonegal responds that he had no authority to approve an assignment.

Saevig, debtor's attorney, declares that in certain conversations with Jacobson, CPI's attorney, occuring in April he indicated that the sale was pending and that debtor was prepared to pay all post-petition rent. According to Jacobson, only one conversation occurred in which he allegedly told Saevig that he had no authority to approve an assignment.

Saevig also declares that debtor indicated its intention to assume the lease at the first meeting of creditors, on March 14, and at an earlier meeting with the United States Trustee. During oral argument at the hearing, Saevig indicated that no representatives of CPI appeared at either meeting.

The written agreement for sale of debtor's business is dated April 29, 1986. Saevig asserts that debtor and the purchaser reached an agreement in principle in February.

At an earlier hearing, on April 15, 1986, the court per Judge Elliott ordered that debtor pay all administrative rent then due and owing. Saevig then tendered and Jacobson accepted two checks which brought the rent current. The court further ordered timely payment of May rent, which occurred on May 1. No evidence is before the court regarding payment of rent for the months of June or July. Otherwise, the rent appears to be current.

The sixty-day period specified by section 365(d)(4) of the Bankruptcy Code, expired on March 18, 1986. CPI filed its motion for relief from stay and to deem the lease rejected on March 21. CPI filed an independent motion to deem the lease rejected on April 23.

Debtor has not moved to assume the lease or extend the time to assume it.

## DISCUSSION OF LAW

The arguments of the parties are as follows. CPI asserts that debtor failed to move to assume the lease or obtain an extension of time during the sixty days after the filing. Hence, the lease is deemed rejected. Debtor responds that it communicated its intent to assume and assign the lease, and that landlord accepted postpetition rent and indicated that it would take no action so long as the rent was timely paid. Hence, debtor took sufficient steps to assume the lease, or alternatively, landlord waived its rights under section 365(d)(4) of the Code.

A. *Assumption of an unexpired nonresidential real property lease may only occur by formal motion.*

██ This court has elected to follow *In re By-Rite Distributing Inc.,* 55 B.R. 740 (D.Utah 1985) *rev'ing* 47 B.R. 660 (Bankr. D.Utah 1985) Hence, a debtor-in-possession is entitled to seek to assume an unexpired lease of nonresidential real property so long as a motion to assume is filed within the sixty-day period specified in section 365(d)(4).

Debtor asserts that its alleged communication of its intent to assume the lease and assign the lease constitutes a sufficient manifestation of its intent to assume. Debtor relies on *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 52 B.R. 850 (Bankr.N.D.Ill.1985) and *In re Ro-An Food Enterprises, Inc.,* 41 B.R. 416 (Bankr.E.D. N.Y.1984) for the proposition that section 365(d)(4) can be satisfied by some action other than a formal motion.

In a very recent decision of the Bankruptcy Appellate Panel, *In re Treat Fitness Center, Inc.,* 60 B.R. 878, 880 (9th Cir. BAP, 1986), the court expressly rejected the argument that a lease may be assumed by any conduct short of a timely formal motion. Since this court is bound by the *Treat Fitness* decision, *see* 28 U.S.C. § 158, debtor herein failed to timely assume the subject lease. Therefore, unless waiver or estoppel applies, the lease is deemed rejected.

B. *Waiver and Estoppel are Inapplicable.*

This court has found four reported decisions concerning waiver of and estoppel from asserting a landlord's rights under subsections 365(d)(3) and (4). One of these decisions holds that a waiver may occur. *In re T.F.P. Resources,* 56 B.R. 112 (Bankr. S.D.N.Y.1985) (acceptance of postpetition rent beyond sixty-day period constitutes a waiver). Another decision holds that the landlord may be estopped from asserting that the lease is deemed rejected. *Matter of Haute Cuisine,* 57 B.R. 200 (Bankr.M.D. Fla.1986) (landlord's agreement to approve propsective assignee upon debtor's dismissing pending Chapter 11 case, resulting in debtor's failure to move to assume or seek extension of time precludes landlord from asserting § 365(d)(4) automatic rejection). However, the court in *In re Re-Trac Corporation,* 59 B.R. 251, 256 (Bankr.D.Minn. 1986) held that the statutory language does not allow for a waiver, expressly rejecting the *T.F.P. Resources* decision. The court in *In re Las Margaritas, Inc.,* 54 B.R. 98 (Bankr.D.Nev.1985) also indicated that a waiver may not occur.

In finding a waiver, the court in *T.F.P. Resources, supra* interpreted the language of section 365(d)(3) literally, and held that the acceptance of rent beyond the sixty-day period, along with knowledge of the pending bankruptcy case constituted a waiver. *Id.* 56 B.R. at 116. In *Re-Trac, supra,* the court questioned this logic, particularly in light of the express purpose of 1984 amendments to section 365(d), and held that acceptance of postpetition rent during or after the sixty-day period cannot constitute a waiver. *Re-Trac, supra,* 59 B.R. at

256–58. The court indicated that the anti-waiver language of section 365(d)(3) applies to state law remedies and *other* remedies outside of section 365(d) available under the Code. *Id.* The court also indicated that a waiver outside of the sixty-day period is impossible because once the lease is deemed rejected by operation of section 365(d)(4), debtor no longer has any interest in the leasehold, relying on *Lovitt v. Appleatchee Riders Ass'n (In re Lovitt)*, 757 F.2d 1035 (9th Cir.1985). *Re-Trac, supra,* 59 B.R. at 256–57.

The statutory language of section 365(d)(4) is clear. Failure to assume a nonresidential real property, or obtain an extension to do so, within sixty days after commencement of the case, results in automatic rejection of the lease. However, subdivision (3) clearly states that acceptance of postpetition rent during the sixty-day period does not constitute a waiver of the landlord's rights under the Code.

Inconsistent provisions of the Code should be construed in a manner that harmonizes the discrepancy, rather than highlighting it. *In re Kaveney*, 60 B.R. 34, 36 (9th Cir. BAP 1985). Although the language of section 365(d)(3) might allow for a waiver, this interpretation defeats the purpose of and the result required by section 365(d)(4). Applying the anti-waiver provision to acceptance of any post-petition rent does not contradict the express language of section 365(d).

As for estoppel, the court in *Haute Cuisine, supra,* was faced with a particularly egregious factual situation. In the instant case, even viewing the facts in a light most favorable to defendant, this court would not hold that CPI is estopped. More importantly, *Lovitt, supra,* and *Treat Fitness, supra,* appear to preclude the use of either waiver of estoppel concerning section 365(d)(4). Failure to properly assume the lease within the sixty-day period results in an automatic rejection of the lease and extinguishes any and all interest of the debtor in the leasehold. Subsequent to the automatic rejection, this court has no jurisdiction to resurrect in favor of the debtor, a property right that no longer exists. Furthermore, since the *Treat Fitness* decision prohibits assumption by any method other than a timely formal motion, it necessarily precludes using waiver or estoppel to accomplish the same result. If either waiver or estoppel were applicable, the Congressional intent in enacting the 1984 amendments, eliminating uncertainty regarding the status of nonresidential leases and requiring the debtor-in-possession to take affirmative action to assume the lease, *In re Las Margaritas, supra,* 54 B.R. at 100, would be circumvented. This court is unwilling to ignore the clear purpose of the 1984 amendments.

Debtor herein failed to timely move to assume the subject lease or obtain an extension of time to do so. Pursuant to section 365(d)(4) the lease is deemed rejected. The debtor shall deliver-up possession of the premises forthwith to CPI or its authorized representative.. 11 U.S.C. § 365(d)(4).

As a result of the rejection, CPI is entitled to relief from stay for "cause", pursuant to section 362(d)(1), to enforce any and all of its rights to possession. Although such relief appears to be unnecessary, the stay is terminated, nevertheless, so that CPI may obtain possession through state court proceedings if the debtor disobeys this order.

C. *Ramifications of Automatic Rejection*

Although the foregoing decision eliminates any uncertainty regarding the continued existence of the lease, it apparently creates uncertainty regarding the debtor's postpetition lease payments for any time outside of the sixty-day period. During the sixty-day period and any authorized extensions of time, timely payments under lease are required by section 365(d)(3). *In re Tandem Group, Inc.*, 60 B.R. 125 (Bankr.C.D.Cal.1986) However, once the lease is deemed rejected, the lease rate no longer controls; instead, the debtor is only required to pay the reasonable rental value of the premises. *Tandem Group,*

*supra.* More importantly, the entitlement to automatic payment, without applying to the court for payment of an administrative expense, is necessarily eliminated. An action by debtor for turnover of rent paid after the filing of any time outside of the sixty-day period appears to be proper. The filing of a proof or proof(s) of claim and an application for payment of administrative expenses by CPI also' appear to be appropriate.

IT IS SO ORDERED.