FILED

MAR 14 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                                    )     BAP No. AZ-17-1291-LKuB
                                          )
J & M FOOD SERVICES, LLC,                 )     Bk. No. 2:17-bk-01466-DPC
                                          )
                Debtor.                   )
_____         )
J & M FOOD SERVICES, LLC,                 )
                                          )
                Appellant,                )
                                          )
v.                                        )     **M E M O R A N D U M***
                                          )
CAMEL INVESTMENT L.L.C.,                  )
                                          )
                Appellee.                 )
_____         )

Argued and Submitted on February 23, 2018
at Phoenix, Arizona

Filed - March 14, 2018

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Chief Bankruptcy Judge, Presiding
_____

Appearances:    Jonathan P. Ibsen of Canterbury Law Group, LLP
                argued for Appellant; Teresa H. Foster of Brier
                Irish Hubbard & Erhart, PLC argued for Appellee.
                _____


Before: LAFFERTY, KURTZ, and BRAND, Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Debtor appeals the bankruptcy court's order denying its motion to assume lease nunc pro tunc and granting Appellee's motion for relief from stay.  We AFFIRM.

**FACTS**

Debtor J&M Food Services, LLC, is an Arizona limited liability company.  The original members of the Debtor were Jay Ji-Hoon Chung and Maggie Liao; Ms. Liao is now the sole member of the Debtor.  Beginning in May 2014, Debtor leased from Appellee Camel Investment L.L.C. ("Landlord") commercial real property at Camelback-Miller Plaza in Scottsdale, Arizona (the "Premises").  Debtor operates a restaurant called Sushi J at the Premises.

Sometime in 2015, Landlord approached Mr. Chung about relocating Sushi J from the Premises to Landlord's nearby property in the Camelback-Miller Plaza ("Replacement Premises").  Landlord hired an architect and an interior designer to draw up plans for the Debtor's relocation into the Replacement Premises, which was a former Arby's restaurant location.  Ms. Liao and Mr. Chung were apparently willing to relocate Sushi J to this building, but even if they had been unwilling, the lease gave Landlord the right to relocate Debtor's operation to another location in the shopping center.

On July 8, 2016, the Landlord executed a letter of intent providing for an entity called D'Lite to occupy the Premises beginning April 1, 2017.  But rather than relocate the Debtor to the Replacement Premises, Landlord entered into a lease for the Replacement Premises with P&J Food Services, LLC ("P&J"), a limited liability company owned by Pajman Mir Malihi.  Ms. Liao claimed that Mr. Chung was a silent partner with Mr. Malihi in

-2-

P&J, which opened a restaurant named "J's Kaiyo Sushi & Bar" in the Replacement Premises.

According to Ms. Liao's trial testimony, Mr. Chung, her ex-boyfriend, began diverting funds from J&M and became physically abusive toward Ms. Liao. As a result, in June of 2016 she asked him to move out of the apartment they shared. Then, in July of 2016, Mr. Chung obtained a protective order against Ms. Liao to keep her from the restaurant.

In January 2017, Ms. Liao commenced litigation in Arizona Superior Court against Mr. Chung, Landlord, and others, alleging, among other things, that money was being diverted from the Debtor by Mr. Chung and that Mr. Chung had colluded with Landlord to enable Mr. Chung to usurp the Debtor's opportunity to lease the Replacement Premises.[1] The state court appointed a receiver for the Debtor.

On February 17, 2017, Landlord sent a letter to the Debtor and to Ms. Liao's attorney declaring a default under the lease due to the state court's appointment of a receiver and declaring the Lease immediately terminated. That night, Richard and Jane Green and Ms. Liao slept in the Premises in hopes of staving off any attempts by the Landlord to shutter the Premises. The next day, fearing a lockout of the Premises by Landlord, Ms. Liao caused the Debtor to file a chapter 11[2] bankruptcy petition.

---

[1] In the bankruptcy case, Debtor filed an adversary proceeding against Landlord, Chung, Mr. Malihi, P&J, and others, seeking, among other things, damages for stay violations and fraudulent transfers.

[2] Unless specified otherwise, all chapter and section
(continued...)

-3-

On March 1, 2017, Landlord filed its motion for stay relief ("First Stay Lift Motion"), claiming the lease was not property of the bankruptcy estate based on its notice of termination. Debtor opposed the First Stay Lift Motion. The court denied the motion after a hearing, finding that the notice of termination violated the receivership order and was thus ineffective to terminate the Lease.

It is undisputed that the 120-day deadline under § 365(d)(4) for the Debtor to assume or reject the lease expired on June 18, 2017, and that Debtor neither moved to assume the lease nor requested an extension of the deadline. On June 23, 2017, the Landlord filed another motion to lift the automatic stay (the "Second Stay Lift Motion"), seeking relief on the ground that because Debtor failed to file a timely motion to assume the Lease, the Lease was deemed rejected and the Premises must be surrendered to the Landlord. One week later, Debtor filed a motion to assume lease nunc pro tunc ("Assumption Motion"). In the Assumption Motion, counsel explained that the assumption deadline had been missed due to "chaos" at Debtor's counsel's law firm following the sudden death of one of its partners on April 14, 2017. Debtor requested the court use its equitable powers under § 105(a) to allow assumption of the Lease nunc pro tunc. Debtor argued that Landlord knew Debtor intended to assume the Lease based on discussions between its counsel and Debtor's

²(...continued)
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

-4-

counsel, statements made by Debtor's counsel at the First Stay Lift hearing, and the fact that Debtor had paid pre- and postpetition rent. Landlord opposed the Assumption Motion, and the bankruptcy court held a hearing on both motions. After hearing argument, the bankruptcy court set the matters for an evidentiary hearing on whether an oral motion to assume had been made or whether there had been a de facto assumption of the Lease.

At the evidentiary hearing, Ms. Liao and Mr. Greene testified on Debtor's behalf, and Fredrick Touton, an employee of Landlord's property manager, testified on behalf of Landlord. Ms. Liao testified that since the petition date, she had brought current postpetition rent and common area maintenance ("CAM") charges, continued to operate the restaurant, performed repairs to the Premises, and protested Jay's Kaiyo Sushi & Bar's liquor license application. Ms. Liao also testified that she had been notified by the City of Scottsdale that the restaurant's grease traps needed to be replaced, and that she or her attorneys had notified Landlord of this issue. Mr. Touton testified that he was unaware of any of these actions until shortly before the evidentiary hearing.[3]

At closing arguments, Debtor's counsel requested production of certain emails between Landlord and D'Lite which Mr. Touton had referred to during cross-examination. The bankruptcy court stated that the emails were irrelevant to the question before it

---

[3] The trial exhibits were not included in Appellant's excerpts of record.

and denied the request.

The bankruptcy court entered written findings and conclusions in its Under Advisement Order Re Commercial Real Property Lease. The bankruptcy court found that the Lease with Landlord was deemed rejected on June 19, 2017, that Debtor had not made either an oral or written motion to assume the Lease, that Landlord had not waived its § 365(d)(4) rights, and that Landlord's conduct had not estopped it from enforcing those rights. The bankruptcy court also declined to invoke its § 105(a) powers to permit a nunc pro tunc assumption of the Lease. Thereafter the court entered its order granting Landlord's Second Stay Lift Motion and denying Debtor's Assumption Motion. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G) and (M). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES[4]

Whether the bankruptcy court abused its discretion in denying Debtor's request to order Landlord to produce emails.

Whether the bankruptcy court erred in denying Debtor's Assumption Motion.

## STANDARDS OF REVIEW

We review the bankruptcy court's evidentiary rulings for abuse of discretion; we do not reverse unless the error was

---

[4] Debtor did not assign error to the portion of the bankruptcy court's order granting the Second Stay Lift Motion.

prejudicial. Hudson v. Martingale Inv., LLC (In re Hudson), 504 B.R. 569, 573 (9th Cir. BAP 2014). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. Ariz. Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Ariz. Appetito's Stores, Inc.), 893 F.2d 216, 218 (9th Cir. 1990).

A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 577 (1985)). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson, 470 U.S. at 574; see also Hinkson, 585 F.3d at 1260 (recognizing the rule that a trial court's choice between two permissible views of the weight of evidence is not clearly erroneous where the evidence would support a conclusion either way, citing United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949)).

**DISCUSSION**

Section 365(d)(4) of the Bankruptcy Code governs the assumption or rejection of an unexpired nonresidential lease of real property in a chapter 11 case, providing in relevant part:

> [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately

-7-

surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of —

(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

The trustee or debtor-in-possession must timely perform all postpetition obligations of the debtor under the lease pending assumption or rejection. § 365(d)(3).

Lease rejection upon the expiration of the § 365(d)(4) deadline occurs automatically without need for court approval, and once statutory rejection has occurred, that rejection is conclusive. In re Ariz. Appetito's Stores, Inc., 893 F.2d at 219. Once the lease is deemed rejected, the debtor must immediately surrender the leased property to the lessor. Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077, 1079 (9th Cir. 1989).

As noted, the parties do not dispute that Debtor did not file a motion to assume the Lease before the expiration of the § 365(d)(4) deadline. Accordingly, Debtor may prevail in this appeal only if there is a basis to override the deadline. The bankruptcy court found none. Specifically, the bankruptcy court concluded that (i) under applicable Ninth Circuit authority, it had no power to deem the parties' actions or inactions as an implicit, de facto, or oral motion to assume the lease; and (ii) neither waiver nor estoppel were available to overcome statutory rejection of a lease under § 365, but even if they were, the

-8-

evidence did not support either theory.[5]

**A. The bankruptcy court did not abuse its discretion in denying Debtor's oral motion to produce emails.**

At the evidentiary hearing, Debtor's counsel cross-examined Mr. Touton regarding email communications between Landlord and D'Lite, the entity with which Landlord had negotiated a lease of the Premises. Mr. Touton indicated that he had emailed the principal of D'Lite several times after the bankruptcy filing to keep the company abreast of the developments in the bankruptcy. When asked whether he had produced those emails for the evidentiary hearing, Mr. Touton explained that he had not because the "negotiation emails" were requested, which he interpreted as only those emails transmitted before the lease terms had been finalized.

After testimony had concluded, Debtor's counsel requested that those emails be produced because they might contain a statement that the Lease had been assumed. The bankruptcy court stated that the emails were irrelevant to the question before it and denied the request. Debtor provides no authority for its assertion that this ruling was an abuse of discretion or that it prejudiced Debtor, stating only: "The lower Court declined to provide Debtor's counsel the negative inference, thereby validating Landlord's intentional misconduct to withhold evidence

---

[5] The bankruptcy court also ruled that its equitable powers under § 105(a) could not be invoked to save a debtor who failed to timely assume an unexpired lease and that mistake or excusable neglect under Civil Rule 60, applicable via Rule 9024, could not be invoked to overcome the statutory lease assumption deadline. Debtor has abandoned these issues on appeal.

-9-

supportive of a lease Assumption [sic]. This was error." We find no basis to reverse the bankruptcy court's evidentiary ruling.

**B. The bankruptcy court did not err in concluding that the parties' conduct did not constitute an implicit, de facto, or oral motion to assume.**

An oral motion to assume a lease must fit the definition of a motion. <u>Sea Harvest Corp.</u>, 868 F.2d at 1080. Rule 6006(a) provides that "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than part of a plan, is governed by Rule 9014." Rule 9014, in turn, provides that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Additionally, Rule 9013 requires that a request for an order must be made by written motion unless made during a hearing, and that the motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought."

In its Under Advisement Order, the bankruptcy court listed the actions of the Debtor and Landlord that Debtor argued constituted an implicit or de facto assumption. These are (i) Debtor vigorously opposed the First Stay Lift Motion, arguing that without its access to the Premises through the Lease, the Debtor's contemplated chapter 11 plan would be crippled; (ii) Debtor's Pre-Confirmation Report noted that Debtor intended to file a plan of reorganization "that will enable it to continue operating the restaurant postconfirmation"; (iii) the Pre-Confirmation Report suggested the possibility of retaining a reputation manager to help regain the restaurant's online

-10-

presence; (iv) a February 27, 2017 letter from Debtor's counsel to Landlord's counsel noted that the Lease was property of the Debtor's bankruptcy estate and referenced Debtor's intentions concerning the Lease;[6] (v) Debtor objected to the liquor license application of the competing sushi restaurant slated to occupy the Replacement Premises because Debtor feared the damage that competition would cause to the Debtor's business location; (vi) postpetition, Debtor paid the 2016 CAM charges assessed by the Landlord, arguably paid the Landlord for the January 2017 rent, and was current on postpetition payments due under the Lease that Landlord demanded and accepted postpetition; (vii) Ms. Liao advanced $20,000 postpetition to keep the Debtor's restaurant operating at the Premises; (viii) Debtor's prepetition lawsuit against Landlord and others sought damages arising out of Landlord allowing the Replacement Premises to be occupied by a competing business, which was apparently connected to Chung; (ix) Debtor filed an adversary proceeding in this bankruptcy that evidences its intent to run its sushi business in either the Premises or the Replacement Premises; (x) postpetition emails and other communications between the Landlord and the Debtor's representatives concerning rent, grease trap repairs, and the Replacement Premises reflect Debtor's intent to remain in the Premises and that the Landlord knew or should have realized this fact; and (xi) Debtor incurred and paid for several postpetition repair bills at the Premises.

Based on the foregoing, the bankruptcy court found that

---

[6] This letter was not included in the excerpts of record.

-11-

"Debtor's filings with the bankruptcy court and oral representations before this Court were consistent with the Debtor's intent to assume the Lease, and . . . the Debtor's desire was known (or should have been understood) by the Landlord." But the bankruptcy court rejected the notion that the parties' statements and understandings constituted an oral motion to assume the Lease, noting that at no point did Debtor request that the court enter an order approving the assumption of the Lease, nor was the Landlord given reasonable notice and opportunity for hearing. The evidence supports this finding.[7]

As for implicit or de facto assumption, this Panel has held that a lease may not be assumed by conduct. Treat Fitness Ctr., Inc. v. Rainbow Inv. Co. (In re Treat Fitness Ctr., Inc.), 60 B.R. 878, 878 (9th Cir. BAP 1986). In that case, the Panel interpreted § 365 and Rule 6006 to require a formal motion to assume, "thus overruling cases under the former Bankruptcy Act that required courts to judge whether words or deeds, often ambiguous at best, constituted an assumption or rejection of a lease or executory contract." Id. at 879. The bankruptcy court thus concluded that, regardless of its finding that Debtor intended to assume the Lease and the Landlord knew or should have known of this fact, the court could not find a de facto or implicit assumption of the Lease in the absence of a timely motion to assume that complied with applicable Bankruptcy Rules. We find no error in this conclusion.

---

[7] Despite Debtor's argument that statements made by counsel at the April 27 hearing constituted an oral motion to assume, no transcript of that hearing was offered into evidence.

-12-

Debtor urges this Panel to follow the reasoning of USPG Portfolio Two, LLC v. Sportsman Link, Inc. (In re Sportsman's Link, Inc.), No. 07-10454, 2007 WL 7023835 (Bankr. S.D. Ga. Oct. 31, 2007). In that case, the bankruptcy court found that the debtor had timely requested the court's permission to assume a nonresidential real property lease. In so finding, the court interpreted debtor's requests for permission to sublease the premises as an oral motion to assume because such a request necessarily presupposed that the debtor would assume the lease. Id. at *4. But we are not bound by this opinion, which is directly contradictory to applicable Ninth Circuit authority. Sea Harvest Corp., 868 F.2d at 1080.

Debtor also contends that the bankruptcy court erred in concluding that there was no de facto assumption of the Lease, citing the fact that the Landlord accepted prepetition rent and CAM charges postpetition.[8] But under In re Treat Fitness Center, which establishes a bright line rule that an assumption be accomplished by formal motion, the acceptance of prepetition obligations is irrelevant to whether there was a de facto or implicit assumption.

**C.    The bankruptcy court did not err in concluding that the Landlord's position was not barred by the doctrines of waiver and estoppel.**

We have found no controlling authority in the Ninth Circuit regarding whether the doctrines of waiver and estoppel are

_____

[8] As discussed below, the parties disputed whether the CAM charges were pre- or postpetition obligations; the bankruptcy court found that they were prepetition obligations, relying on In re Ames Dept. Stores, Inc., 136 B.R. 353, 356 (Bankr. S.D.N.Y. 1992).

-13-

available to bar a lessor from asserting that a lease has been deemed rejected under § 365(d)(4). Bankruptcy courts in this circuit are divided on the issue. See, e.g., In re Sjoquist, 484 B.R. 207 (Bankr. C.D. Cal. 2012) (waiver and estoppel defeated landlord's claim of rejection); In re VMS Nat'l Props., 148 B.R. 942 (Bankr. C.D. Cal. 1992) (lessor waived rights under § 365(d)(4) by accepting prepetition rents); In re Chandel Enters., Inc., 64 B.R. 607 (Bankr. C.D. Cal. 1986) (concluding that waiver and estoppel are not available in the context of § 365(d)(4)).

In George v. Morro Bay (In re George), 177 F.3d 885 (9th Cir. 1999), the Ninth Circuit Court of Appeals examined whether a lessor that had demanded and accepted rent from the debtors after the expiration of the § 365(d)(4) assumption deadline could be barred by the doctrines of waiver or estoppel from asserting that the lease had been rejected. The Court of Appeals declined to decide whether those doctrines were available at all in the context of § 365(d)(4), instead concluding that the lessor's conduct did not constitute a waiver or justify application of equitable estoppel.

Here, the bankruptcy court concluded that waiver and estoppel are not available to contravene the requirements of § 365(d)(4). The court found persuasive In re Chandel Enterprises and rejected the reasoning of In re VMS Nat'l Properties, a case relied upon by Debtor.

In In re Chandel Enterprises, the bankruptcy court interpreted this Panel's decision in In re Treat Fitness and the Ninth Circuit's decision in Lovitt v. Appleatchee Riders Ass'n

-14-

(In re Lovitt), 757 F.2d 1035 (9th Cir. 1985), as precluding the application of waiver or estoppel in the § 365(d)(4) context. In In re Lovitt, the Court of Appeals held that once an executory contract is deemed rejected it is no longer property of the bankruptcy estate. 757 F.2d at 1041.[9] The bankruptcy court in Chandel concluded that finding an assumption based on a landlord's alleged waiver would defeat the purpose of and the result required by § 365(d)(4). 64 B.R. at 610. As for estoppel, the court found that failure to assume the lease properly resulted in automatic rejection and extinguished any and all interest of the debtor in the leasehold such that the court had no jurisdiction to resurrect it. Id. The bankruptcy court further concluded that Treat Fitness's holding that assumption may only be accomplished by a timely formal motion necessarily precluded using waiver or estoppel to accomplish an assumption. Id. "If either waiver or estoppel were applicable, the Congressional intent in enacting the 1984 amendments, eliminating uncertainty regarding the status of nonresidential leases and requiring the debtor-in-possession to take affirmative action to assume the lease would be circumvented." Id. (citation omitted).

In In re VMS National Properties, the bankruptcy court ruled that a lessor waived the assumption deadline under § 365(d)(4) by accepting a partial prepetition cure and postpetition payments after the expiration of that deadline. The bankruptcy court in

---

[9] Although Lovitt was decided under the Bankruptcy Act, subsequent cases decided under the Bankruptcy Code also hold that the rejection of an unexpired lease removes the lease from the bankruptcy estate. In re Onecast Media, Inc., 439 F.3d 558, 563 (9th Cir. 2006).

-15-

VMS did not consider In re Treat Fitness or In re Chandel, and instead cited bankruptcy cases from outside the Ninth Circuit for the proposition that waiver and estoppel are available in the § 365(d)(4) context.[10]

We find it unnecessary to determine whether, as a matter of law, waiver or estoppel may be applied in the context of § 365(d)(4) because we agree with the bankruptcy court that even if those doctrines are available, they do not apply in this instance.

### 1. Waiver

To determine that a waiver has occurred, the bankruptcy court would need to find "(1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit." In re George, 177 F.3d at 889.

It is undisputed that the first two elements are met. Debtor focuses its arguments on the Landlord's intent to relinquish its rights under § 365(d)(4), relying on the conduct listed in section B above. But here, unlike the lessor in In re VMS Nat'l Properties, Landlord took no action post-rejection that was inconsistent with rejection. Landlord filed its Second Stay Lift Motion four days after the lease was deemed rejected.

---

[10] In re Car-Gill, Inc., 125 B.R. 133 (Bankr. E.D. Pa. 1991); In re Austin, 102 B.R. 897 (Bankr. S.D. Ga. 1989); In re T.F.P. Resources, Inc., 56 B.R. 112 (Bankr. S.D.N.Y. 1985); In re By-Rite Distrib., Inc., 47 B.R. 660, 670, n.16 (Bankr. D. Utah 1985), rev'd on other grounds sub nom, By-Rite Distrib., Inc. v. Brierley, 55 B.R. 740 (D. Utah 1985).

-16-

Moreover, per § 365(d)(3), the Landlord's acceptance of postpetition rents could not have been a waiver, as that subsection provides that acceptance of performance of postpetition lease obligations does not constitute a waiver or relinquishment of lessor's rights under the lease. As for the acceptance of prepetition amounts due, the evidence is unclear as to whether or when the January 2017 rent was paid, and, based on Mr. Touton's testimony, the Landlord believed that the 2016 CAM charges were postpetition obligations.

### 2. Estoppel

A finding of inequitable conduct is necessary to estop a landlord from asserting its § 365(d)(4) rights. Id. at 889-90. Here, the court found that Landlord did not act inequitably postpetition in dealing with the Debtor and its representatives. The bankruptcy court acknowledged that other conclusions might be drawn based on Landlord's prepetition conduct relative to the Relocation Premises, but that conduct was not relevant to a determination of whether Landlord should be equitably estopped from asserting its rights under § 365(d)(4); instead it could be addressed in the pending adversary proceeding or state court action.

Debtor contends that the bankruptcy court clearly erred in finding that the Landlord did not engage in inequitable conduct, pointing out that the evidence at trial showed that Landlord's representative stated to Ms. Liao that she "took over the lease" and thus had to pay the prepetition rent and CAM charges. Ms. Liao testified that in April 2017 she went to the Landlord's office to pay the May rent and was told by a man she described as

-17-

"a skinny guy and like 40 something years old" that she had to pay the 2016 CAM charges "because this summer you ran it only by yourself. You took over the lease. You have to pay for this." Debtor interprets the statement "you took over the lease" as evidence that Landlord thought Debtor had assumed the lease, but it is also plausible that the statement referred to the fact that, prepetition, Ms. Liao had taken over managing the business in place of Mr. Chung. The parties did not elicit testimony to clarify that point, and the bankruptcy court made no finding. Accordingly, the cited testimony, without more, is inadequate to support a finding of inequitable conduct. Thus the bankruptcy court did not err in finding no basis to apply equitable estoppel.

**3. Whether the CAM charges arose pre-or postpetition is irrelevant to the analysis of whether Landlord waived or should be estopped from asserting its rights under § 365(d)(4).**

The bankruptcy court concluded that the 2016 CAM charges were prepetition claims pursuant to In re Ames Dept. Stores, 136 B.R. at 356 (amounts charged to a debtor for common area maintenance expenses and real estate taxes were unmatured, prepetition obligations, not postpetition obligations subject to immediate payment). Seizing on this conclusion, Debtor argues that Ames Department Stores supports its argument that the Landlord demanded payment of prepetition amounts. Landlord points to the conflicting decision of In re R.H. Macy & Co, Inc., 152 B.R. 869 (Bankr. S.D.N.Y. 1993), in which the bankruptcy court found that even if such a debt arose prepetition, there was no obligation for the Debtor to perform prepetition. Landlord

argues that under R.H. Macy, Debtor's obligation to reimburse Landlord for the CAM charges did not arise until Landlord presented the CAM reconciliation to Debtor postpetition.

Regardless of whether the CAM charges are deemed pre- or postpetition obligations, there is no evidence to support the conclusion that acceptance of payment for those charges amounted to a waiver or constituted grounds for estoppel. There is no evidence in the record that the personnel who demanded payment of the CAM charges did so knowing that those charges were prepetition claims. In fact, at the evidentiary hearing, Mr. Touton testified that he did not believe the 2016 CAM charges represented prepetition charges because they did not come due until March 20, 2017. This testimony negates any inference that Landlord intentionally relinquished its rights under § 365(d)(4) or acted inequitably in demanding payment.

Accordingly, whether the CAM charges are deemed to be pre- or postpetition does not impact the outcome of this appeal.

**CONCLUSION**

For the reasons explained above, we AFFIRM.