In re **VALLEY STEEL PRODUCTS COMPANY, INC., et al.,** Debtors.

**Mildred Segall, Barbara Duncan, Lynne Weil, and Jeanne Shelton, Movants.**

**Bankruptcy No. 92–40778–293. Motion No. 154.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Sept. 28, 1992.

See also 142 B.R. 337.

Francis B. Marjorie, Dallas, Tex., for Segall, Shelton, Weil and Duncan.

Peter D. Kerth and David J. Harris, St. Louis, Mo., for debtor.

James S. Cole, Asst. U.S. Trustee, St. Louis, Mo.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

FACTUAL BACKGROUND

The parties, Valley Steel Products Company, Inc., et al ("Valley") and Mildred Segall, Barbara Duncan, Lynne Weil and Jeanne Shelton (together "Segall"), submitted to the Court on August 6, 1992 the following Stipulation Of Facts To Accompany Segall's Response To Valley's Motion To Reject Lease:

1. On February 4, 1992 (the "Petition Date"), the Debtors filed their voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and orders for relief were entered.

2. On March 6, 1992, Debtors filed a Motion For Order Extending Time Within Which To Assume Or Reject Unexpired Leases Of Nonresidential Real Property ("Debtors' Motion To Extend"). On March 23, 1992, Segall filed an opposition to the Motion To Extend and a cross-motion to compel assumption or rejection of the Lease (the "Segall Extension Opposition"), and Debtors filed a reply on April 10, 1992.

3. On March 30, 1992, the Court set a hearing on Debtors' Motion To Extend and Segall's Extension Opposition for April 15, 1992. At the conclusion of that hearing, the Court entered an oral order giving the Debtors until May 22, 1992 to decide whether to assume or reject the Segall Lease.

4. On April 23, 1992, Debtors filed a Motion For Order Approving Rejection Of Certain Unexpired Leases Of Nonresidential Real Property (the "Motion To Reject"). In the Motion to Reject, Debtors sought an order approving their business decision to reject the Segall Lease. Segall filed a Response to Valley's Motion To Reject Lease on May 5, 1992 ("Segall's Response"). The Court granted the Motion To Reject dating the rejection as of May 13, 1992. The Court also ordered additional argument on the other issues raised by Segall's Response.

*Facts Relating To The Amount And Classification of Segall's Claim*

5. The document attached as Exhibit A is a true and correct copy of the Segall Lease.

6. The Debtors paid Segall rent of $2,043 per month through May 13, 1992 as rent under paragraph 2(a) of the Segall Lease. The total rent paid by the Debtors to Segall since the Petition Date is $7,150.

7. The Debtors subleased part of the property which is the subject of the Segall Lease (the "demised premises" to Robert and Sherry Hensley for use as a liquor store. The Hensleys paid rent in advance of $7,375.50 about every six months to the Debtors. The Debtors collected this six month rental on September 5, 1991 and on January 8, 1992.

8. The Debtors subleased part of the demised premises to P & H Transportation, Inc. for rent of $3,300 per month ($3,500 a month minus $200 a month as a building insurance adjustment). The only post-petition payment from P & H to the Debtors was $3,300 for the month of May, 1992.

9. Debtors did not pay $27,088.66 which was due and owing for 1991 Taxes before filing for bankruptcy.

10. Debtors did not pay taxes relating to any part of 1992.

# 170

(Stipulation Of Facts To Accompany Segall's Response To Valley's Motion To Reject Lease, at 1–3.)

## DISCUSSION

Segall's Response to Valley's Motion For Order Approving Rejection Of Certain Unexpired Leases Of Nonresidential Real Property did not assert a position on whether the court should grant Valley's motion. Rather, Segall requested two items of relief from the court in the event we should grant Valley's motion and issue an order approving the rejection of Valley's lease with Segall. First, Segall asked that the court deem the effective date of the rejection of the lease to be the date on which Valley filed its petition for bankruptcy protection. Second, Segall asked the court to order Valley to disgorge any rents (pro rata) Valley received from its subtenants after the effective date of the lease's rejection and pay those rents over to Segall.

To support its position that the effective rejection date of the lease should be the date on which Valley filed its petition, Segall equates the lease it had with Valley to other executory contracts and cites the court to authority holding that the rejection of an executory contract has a retroactive effect to the date of the filing of the debtor's petition for bankruptcy relief. Debtor cites *In re Tonry*, 724 F.2d 467 (5th Cir. 1984) and *In re Lovitt*, 757 F.2d 1035 (9th Cir.1985). The *Tonry* case involved the issue of whether an attorney-debtor's contingent fee contracts on which he still owed performance of legal services were property of the estate. The *Tonry* court held that the executory contracts did not automatically become property of the estate upon debtor's filing bankruptcy. The court further held that because the nondebtor parties to the contingent fee contracts could, under state law, decline performance

by the trustee, the trustee could not assume the contracts for the estate. *Id.* at 469. The *Tonry* court did not discuss whether the rejection of an executory contract had a retroactive effect because the case involved the question of whether a trustee could assume executory contingency fee contracts, not the effect of the rejection of those executory contracts. *In re Lovitt*, 757 F.2d 1035 (9th Cir.1985), involved two unexpired mineral leases the debtor held at the time he filed his petition in bankruptcy. The trustee did not discover these unscheduled, unexpired leases and so neither assumed nor rejected them. Years later, the bankruptcy court reopened the case and allowed a successor trustee to sell the debtor's interest in the leases. On appeal, the Ninth Circuit held that a trustee has a duty to search for unscheduled executory contracts and leases. The court further held that when the successor trustee failed to assume the leases within 60 days of her appointment the leases were statutorily rejected under a provision of the Bankruptcy Act analogous to Section 365(d)(1) of the Bankruptcy Code. *Id.* at 1040. The Ninth Circuit explained that the mineral leases had never been property of the estate because the rejection of an executory contract is retroactive to the date of the filing of the debtor's bankruptcy petition. *Id.* at 1041.[1]

█ The court is not persuaded by Segall's position. In *In re Worth's Stores Corp.*, 130 B.R. 531 (Bankr.E.D.Mo.1991), Judge Schermer of this court addressed the issue of what date should be the effective date of rejection of a lease when a trustee rejects an unexpired lease. In that case Judge Schermer read the plain language of section 365 and Bankruptcy Rules 6006(a) and 9014 and concluded that because they "afford[ed] such lessor both reasonable notice and opportunity to be heard prior to an

---

1. The Bankruptcy Court for the District of Hawaii later chose not to apply this portion of the *Lovitt* decision. *In re Gillis*, 92 B.R. 461 (Bankr. D.Haw.1988). The *Gillis* court explained: "The court in *Lovitt* held that, because rejection of an executory contract is retroactive to the date the bankruptcy petition is filed, such a contract never became part of the estate. 757 F.2d at

1041. But this particular aspect of the *Lovitt* decision cannot be treated as precedent in the present case since 11 U.S.C. § 541 provides that property of the estate includes all property in which debtor has an interest. *Lovitt* was decided under the former bankruptcy Act, which limited that which was considered property of the estate." *Id.* at 466.

adjudication of its rights under the lease" they necessarily required that the rejection not have a retroactive effect. 130 B.R. at 533–34. The *Worth's Stores* court also noted that giving retroactive effect to the trustee's decision to reject a lease would render the court's approval a "meaningless formality" and place the lessor in a "precarious financial position" in the time between debtor's filing bankruptcy and the hearing on the trustee's motion to reject the lessor's lease (or expiration of the 60 day period after which unassumed leases in a Chapter 7 proceeding are deemed rejected under section 365(d)(1)). *Id.* This court agrees that the effective date of the trustee's rejection of an unexpired lease should be the date on which the court issues its order approving the rejection, not the date on which the debtor filed its petition seeking bankruptcy protection.

Segall also asserts that upon rejection of a lease a debtor may no longer receive any benefits from the lease it rejected. Hence, Segall argues that the court should order Valley to disgorge the rents it collected from its sublessees on the demised property for the time following the effective date of rejection.

The parties have stipulated that one of Valley's subtenants, the Hensleys, paid their rent every six months and that Valley collected a rent payment from the Hensleys on January 8, 1992. The record does not reveal what six month period this payment covers. It may be that the Hensleys payment of January 8, 1992 fulfilled their rental obligation for the first six months of 1992 in which case the Hensleys would have paid Valley for rental of part of the premises Segall leased to Valley for approximately one and one half months beyond the effective rejection date of the Valley's lease with Segall. Likewise, the parties have stipulated that the second sublessee of the property Segall leased to Valley, P & H Transportation, paid rent to Valley for the entire month of May 1992 and so Valley received rent from P & H Transportation to cover the fourteen days following the effective date of Valley's rejection of its lease with Segall. The court

agrees that a Debtor who rejects a lease should not reap benefits from that lease following the effective date of the lease's rejection. Valley must account for any rents it collected from its sublessees for letting of the property leased from Segall to Valley for any time after May 13, 1992 and turn those rents over to Segall. For example, P & H Transportation paid rent to Valley for the entire month of May 1992, Valley must account for the portion of that rent attributable to the last 18 days of May, those following May 13, 1992, the rejection's effective date, and turn those rents over to Segall. Likewise, Valley must account for any rent the Hensleys paid for periods extending beyond the effective date of the rejection of the lease between Valley and Segall and turn over those rents to Segall.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED that

(1) Valley shall file an accounting with the Court for any rents it collected that were to be applied for rental of property after May 13, 1992, the effective date of the rejection of the lease, from its sublessees Robert and Sherry Hensley and P & H Transportation; and

(2) Valley shall turn over to the Movants any such rents received from the Hensleys and P & H Transportation that were paid for periods extending beyond May 13, 1992.