**In re O'NEIL THEATRES, INC. f/k/a Trade–A–House Corporation, Debtor.**

**In re Timothy H. O'Neil, Debtor.**

**Nos. 00–15269, 00–15403.**

United States Bankruptcy Court, E.D. Louisiana.

Nov. 15, 2000.

Emile L. Turner, Jr., Turner, Young, Hebbler & Babin, New Orleans, LA, for debtor.

Susan D. Frieze, Dallas, TX, for creditor.

### *REASONS FOR ORDER*

JERRY A. BROWN, Bankruptcy Judge.

On September 8, 2000, the court heard oral argument on the amended motion filed by O'Neil Theaters, Inc. ("O'Neil") to reject leases, one of which it had entered into with Market Street Developers, Ltd. ("Market Street").[1] O'Neil moves the court to reject that lease retroactively to August 11, 2000, the date on which O'Neil closed that theater. Market Street contends that the lease should be rejected as of the hearing date. At the hearing, the court rejected the lease, and took under

---

1. Pl. 18.

advisement the issue as to the effective date of lease rejection. The court holds that under the facts and circumstances of this case, the lease will be rejected retroactive to the date that the debtor filed its petition for Chapter 11 relief.

## I. Factual Background

In February of 1993, O'Neil and Market Street entered into a lease agreement by which O'Neil leased from Market Street property in the West End Market Place Shopping Center in Dallas, Texas. O'Neil granted Market Street a security interest in its inventory, furniture, fixtures, improvements, and personal property on the leased premises. Market Street perfected its security interest by filing the proper financing statements.

Due to operating losses and its inability to negotiate a reduction in rent, O'Neil closed the theater on August 11, 2000, with Market Street's knowledge. O'Neil removed from the theater only the films, so that they could be returned to the company from which O'Neil had leased them. On August 12, 2000, Market Street padlocked the premises. On August 25, 2000, O'Neil filed a voluntary bankruptcy petition for relief under Chapter 11. The debtor filed its motion to reject on August 28, 2000, and an amended motion on August 30, 2000.

## II. Analysis

Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a), states, "Except as provided . . . the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

The majority of courts hold that under this section court approval for the rejection of a nonresidential lease is necessary in order for the rejection to become effective.[2] Courts disagree, however, as to whether a court may make that rejection retroactive to a time before court approval is obtained.[3]

Thus, as the statute is read on its face, the trustee may reject a lease, but the rejection must be approved by the court. The question remaining, therefore, is whether the court may authorize a *retroactive* rejection of a nonresidential lease to a date prior to the court's approval of the rejection. Section 365(a) does not answer this question, nor has the Fifth Circuit spoken on the issue.

The only appellate court to address the issue is the First Circuit in the case of *In re Thinking Machines Corp.*[4] In *Thinking Machines*, the First Circuit held that equitable principles could be applied to reject a lease retroactive to the motion filing date, which was the date that the landlord was given notice of the intent to reject the lease.[5] The court followed the reasoning in the case of *In re Joseph C. Spiess Co.*,[6] which retroactively rejected a lease to the date when affirmative steps to reject the lease were taken. In the *Spiess* case, the affirmative step was serving the landlord with a notice of a motion to reject the lease.[7]

A bankruptcy court in the case of *In re Amber's Stores, Inc.*,[8] found that a debtor who turned over keys and vacated leased premises took affirmative steps necessary to reject the lease. The debtor took these steps before both filing its petition and serving the landlord with notice of intent to reject the lease. Based on the equities of the case, the court retroactively rejected

---

**2.** *See In re Thinking Machines Corp.*, 67 F.3d 1021, 1025 (1st Cir.1995).

**3.** *In re Amber's Stores, Inc.*, 193 B.R. 819, 825–26 (Bankr.N.D.Tex.1996).

**4.** 67 F.3d 1021.

**5.** *Id.* at 1028.

**6.** 145 B.R. 597 (Bankr.N.D.Ill.1992).

**7.** *In re Joseph C. Spiess Co.*, 145 B.R. at 606.

**8.** *In re Amber's Stores, Inc.*, 193 B.R. 819.

the nonresidential lease to the petition date.[9]

Other courts have not allowed retroactive rejection of leases.[10] These courts, comprising what has been described as the majority view, generally hold that the lease rejection is effective on the day on which the court enters the order rejecting the lease.[11] For example, the *Worths* court held that retroactive rejection destroys the notion that parties are entitled to notice and the opportunity to be heard before their rights are adjudicated before a court, and that retroactive rejection renders any subsequent court order a meaningless formality by putting the power of rejection in the hands of the trustee.[12]

■ In the pending case, there are four potential dates as to when the lease may be rejected:

(1) August 11, 2000—the date when O'Neil closed its theater;

(2) August 25, 2000—the date of filing of the petition;

(3) August 28, 2000—the date when O'Neil filed its motion to reject lease; or

(4) September 8, 2000—the date of the hearing.

Although the debtor initially moved to reject the lease as of August 11, 2000, the debtor later changed its position, and sought rejection no later than August 28, 2000.[13] Market Street asserts that the lease should be rejected as of the date of the hearing.

The court is persuaded by the well-reasoned opinion of *In re Amber's Stores, Inc.*, and finds that under the specific facts and circumstances of this case, the lease will be rejected retroactive to the petition date. O'Neil closed its theater on August 11, 2000, with Market Street's knowledge after rental negotiations with Market Street failed. Market Street padlocked the leased premises the next day, thereby exercising full dominion and control over the property. Therefore, at least as of August 12, 2000, Market Street had affirmatively rejected the lease by locking the premises and exercising control over them. The lease was thus clearly rejected by both parties at that time. The court may not make the rejection date retroactive to August 12, 2000, however, because that date is before the petition filing date of August 25, 2000. Therefore, the equities and circumstances of this case dictate that the court reject the lease retroactively to August 25, 2000, the date of filing of the petition.

■ The court emphasizes that in most cases a lease will be considered rejected as of the date of entry of the order approving the rejection, and only in exceptional circumstances such as those presented here will the court adopt a retroactive date.

An order will be entered rejecting the lease as of August 25, 2000.

---

9. *Id.* at 827.

10. *In re Garfinckels, Inc.*, 118 B.R. 154 (Bankr.D.C.1990); *In re Jamesway Corp.*, 179 B.R. 33 (S.D.N.Y.1995); *In re Valley Steel Products Co.*, 147 B.R. 168 (Bankr.E.D.Mo. 1992); and *In re Worths Stores Corp.*, 130 B.R. 531 (Bankr.E.D.Mo.1991).

11. *See In re Garfinckels, Inc.*, 118 B.R. at 154; *In re Valley Steel Products Co.*, 147 B.R. at 171; and *In re Worths Stores Corp.*, 130 B.R. at 533.

12. *In re Worths Stores Corp.*, 130 B.R. at 533–534.

13. Pl. 72, Debtor's Memorandum in Support of Rejection of Lease at 4.