In re CCI WIRELESS, LLC, Debtor.

Stonebriar Mall Limited Partnership, et al., Appellants,

v.

CCI Wireless, LLC, et al., Appellees.

No. CIV. A. 02–WM–1565.
Bankruptcy No. 02–11519 SBB.

United States District Court,
D. Colorado.

Aug. 12, 2003.

James B. Holden, Ballard, Spahr, Andrews & Ingersoll, LLP, Denver, CO, for Appellants.

Jeffrey A. Weinman, Weinman & Associates, P.C., Denver, CO, for CCI Wireless, LLC.

Mary Frances Cetrulo, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Unsecured Creditors' Committee of CCI Wireless, LLC.

Leo Weiss, Denver, CO, Office of the United States Trustee.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This appeal arises from the Chapter 11 proceeding filed by debtor CCI Wireless, LLC (CCI). Appellants Stonebriar Mall Limited Partnership, River Hills LLP, Eden Prairie Mall LLC, and Dallas Galleria Limited (collectively "appellants") appeal from two bankruptcy court orders: the June 24, 2002 order authorizing retroactive application of CCI's rejection of four unexpired nonresidential leases and the July 30, 2002 order denying appellants' motion for reconsideration of the denial of their motion to compel payment of rent. Appellees are the debtor-in-possession, CCI, and the Official Unsecured Creditors' Committee of CCI Wireless, LLC.[1]

Jurisdiction over the appeal is proper pursuant to 28 U.S.C. § 158(a)(1).

Based upon the parties' written and oral arguments and my review of the designated record on appeal, I affirm the court's order giving retroactive effect to the authorization of the rejection of the leases. I reverse the court's denial of the motion to compel payment of rent and remand for proceedings consistent with this opinion.

### Background

CCI is in the business of wireless communications and maintains retail stores in various locations in Colorado, Minnesota, Texas, and Utah. At the time CCI filed its Chapter 11 petition, appellants were the lessors, and CCI the lessee, of shopping center space at nine locations; only four of those leases, for properties in Minnesota and Texas, are at issue in this appeal. The rents for the leases were due on the first of each month; CCI has made no payments on any of the four leases since filing bankruptcy.

### Bankruptcy Court Proceedings

CCI filed Chapter 11 proceedings on February 8, 2002. No trustee was appointed, and CCI has acted as a debtor in possession in the case, with the rights, powers, and duties of a trustee, pursuant to 11 U.S.C. § 1107(a).[2]

---

1. Unless otherwise noted, I use "CCI" to refer to both the debtor singly and the appellees collectively.

2. Section 1107(a) bestows on a debtor in possession "all the rights, other than the right to compensation ..., and powers, and shall perform all the functions and duties, except the duties specified in section 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter." These rights and powers are subject to the same limitations Chapter 11 trustee would have and to any limitations or conditions prescribed by the bankruptcy court.

The issues of this appeal arise from two motions presented to the bankruptcy court: (1) CCI's motion to reject real property leases (motion to reject) pursuant to 11 U.S.C. § 365(d)(3), and (2) appellants' motion to compel payment of post-petition rents under the leases (motion to compel).

On March 14, 2002, CCI filed a motion to reject the four unexpired real property leases.[3] The court denied the motion based on CCI's failure to give proper notice to appellants. On March 27, 2002, CCI filed a "renewed" motion to reject the leases, requesting that the rejection be made effective, *nunc pro tunc*, on March 14, 2002. CCI provided notice of this motion, giving interested parties until April 15, 2002, to file objections.

On March 29, 2002, appellants filed a limited objection to the renewed motion, opposing CCI's attempt to make the rejection retroactive to March 14, 2002, but otherwise not objecting to the rejections.

By order dated April 24, 2002, the bankruptcy court granted the motion to reject in part, authorizing CCI to reject the leases on a prospective basis only.[4] The court reserved the right to rule later on the request for a retroactive order.

Given the rejection of the leases, two rental due dates remained at issue: March 1, 2002, and April 1, 2002, which fell within the post-petition, pre-rejection period. On March 25, 2002, appellants filed a motion to compel payment of those post-petition rents. Although CCI objected to the motion, it did not dispute the existence and validity of the leases or the monthly rentals listed in the motion. (The rents listed by the appellants were comparable to (and slightly lower than) the amounts listed by CCI in its Schedule G filing.)

On May 16, 2002, the bankruptcy court held a hearing on these motions and, on June 24, 2002, entered a memorandum opinion and judgment approving the rejection of the leases retroactive to March 14, 2002.[5] It based its decision in part on the

**3.** Apparently, the Eden Prairie Mall lease was inadvertently omitted from the rejection motion. CCI does not challenge the inclusion of the lease in the resolution of this appeal.

**4.** As appellants observe in their opening brief, this order may have been unnecessary because the sixtieth day (from the filing of the Chapter 11 petition) had passed on April 9, 2002. Pursuant to section 365(d)(4), a lease of nonresidential real property is deemed rejected if it is not assumed or rejected within the sixty-day period.

**5.** One aspect of the June 24 order may have bearing on this appeal, although appellants have not challenged it. As part of its ruling on the motion to reject, the bankruptcy court resolved a dispute between the parties over the treatment of CCI's liability for rents due February 1, 2002, for purposes of determining whether the rents were pre-petition or post-petition obligations. CCI championed the "performance date" theory, arguing that because the rents were due February 1, prior to the date of its Chapter 11 filing on February

8, the unpaid rents should be considered pre-petition liabilities in their entirety. Appellants urged the bankruptcy court to follow the proration, or "accrual," approach. Under this theory, the February rents would be prorated throughout the month, leaving only the amount attributed to February 1 through February 8 as a pre-petition liability; the amount attributed to the rest of the month would be a post-petition liability for which CCI would remain responsible under section 365.

The bankruptcy court sided with CCI, ruling that the rents for the entire month of February were pre-petition liabilities because the entire performance was due on February 1, prior to the Chapter 11 filing. Appellants have not appealed this ruling. As discussed below, however, the amount due for the March 1, 2002 rent payments raises a similar issue of whether there should be a proration to the lease rejection date (of March 14) as opposed to performance date liability for the entire month.

equities of the case, including the fact that CCI had vacated the lease premises before or shortly after the date of filing the Chapter 11 case. The court used the filing date of CCI's original motion to reject the leases (the motion that was denied for CCI's failure to give notice of the motion) instead of the date of the renewed motion, stating that CCI should not be penalized as a result of a court rule requiring notice.

The bankruptcy court denied appellants' motion to compel, but on July 3, 2002, appellants filed a motion to alter or amend the June 24 judgment and sought reconsideration of the court's order. In particular, appellants argued that the court's order did not address the rent payments that fell due March 1, 2002, prior to the retroactive rejection date.

In its July 30, 2002 order, the bankruptcy court interpreted appellants' request for payment of March 1, 2002 rents as one for administrative expenses pursuant to section 503(b)(1) and denied the motion because of the failure to show that the leases were a benefit to the Chapter 11 estate.

### Standard of Review

 The district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Bankr.R. 8013. I may set aside the bankruptcy court's findings of fact only if they are clearly erroneous. *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir.1988). Its legal conclusions are subject to *de novo* review. *Id.* Mixed questions of fact and law involving primarily legal issues are reviewed *de novo;* mixed questions involving primarily factual considerations are reviewed under the clearly erroneous standard. *In re Wes Dor Inc.*, 996 F.2d 237, 241 (10th Cir.1993). Legal conclusions drawn from facts are reviewed *de novo. In re Golf Course Builders Leasing, Inc.*, 768 F.2d 1167,

1169 (10th Cir.1985). As discussed below, this case involves both review of legal and factual issues.

### Discussion

Appellants describe the "crux of the appeal" as whether the bankruptcy court may, in its discretion, authorize the retroactive rejection of unexpired leases. Appellants also challenge the court's application of a section 503(b) standard in denying the motion to compel payment of the March 1, 2002 rents.

Before discussing appellant's arguments, I must address two threshold issues. CCI contends that I may not reach the merits of the appeal because the appeal is premature and the record is insufficient to support review.

CCI argues the appeal is premature because the bankruptcy court denied appellants' motion to compel without prejudice. Response Brief at 21–22. I note that both the June 24, 2002 order and the judgment of that date merely state that the motion to compel is denied; neither contains the notation "without prejudice." Further, I construe appellants' arguments on appeal to focus on the retroactive nature of the order authorizing rejection of the leases and on the interplay between sections 365(d)(3) and 503(b)(1) as raised by the order denying the motion for reconsideration. CCI did not argue that these decisions of the bankruptcy court were not final for purposes of appeal.

 CCI also contends that, because appellants did not introduce any evidence at the hearing before the bankruptcy court, they have not created a record sufficient for appeal. *See, e.g., McGinnis v. Gustafson,* 978 F.2d 1199, 1201 (10th Cir. 1992) (failure to provide required record is "an effective barrier to informed, substantive appellate review"). CCI's argument is

based on its view that the appeal turns on factual issues, including whether the leases at issue were unexpired, whether CCI had performed under the leases, and what amounts were due. Response Brief at 13–14.

I disagree. I note that CCI never disputed the status of the leases, their performance, or the rental amounts in the court below despite ample opportunities to do so. The bankruptcy court also made no statements or findings indicating that it was concerned with the state of the record or that appellants' failure to present evidence at the hearing was a controlling factor in its decision. I conclude that the record before me is adequate to allow me to resolve appellants' legal arguments on their merits.

### 1. *Retroactivity*

The retroactivity issue is framed by section 365 of the Bankruptcy Code. Section 365(a) permits the trustee, subject to court approval, to reject unexpired leases. Section 365(d)(3) provides, in relevant part:

> The trustee [or debtor in possession] shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

Appellants do not challenge the bankruptcy court's decision to authorize CCI to reject the leases but only its conclusion that the rejection could and should, under the circumstances of this case, apply retroactively to the date of the original motion to reject. Neither party expressly addresses the proper standard of review applicable to this issue, and I have found no controlling Tenth Circuit authority.

After review of decisions of other courts faced with similar issues, I will adopt the analysis of the Southern District of New York in *In re Jamesway Corp.,* 179 B.R. 33 (S.D.N.Y.1995). There, the court applied a *de novo* review in determining whether, as a matter of law, section 365 prohibits a bankruptcy court from selecting a retroactive date for the rejection of an unexpired nonresidential lease. *Id.* at 35, 37–39. Once it concluded that the statute did not prohibit such rejection, the court applied an abuse of discretion standard in considering whether the circumstances of the debtor's case merited retroactive rejection. *Id.* at 35–36, 39.

Applying these standards here, I concur with the authority from other courts holding that section 365 does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively. *See, e.g., In re Thinking Machines Corp.,* 67 F.3d 1021, 1028 (1st Cir.1995) (approval of rejection may be retroactive based on equities of case); *In re Jamesway Corp.,* 179 B.R. at 37 ("This Court cannot conclude, from the language of § 365(a), that, as a matter of law, the Bankruptcy Court is absolutely prohibited from selecting a retroactive date for the effective date of rejection of the Lease"); *In re O'Neil Theatres, Inc.,* 257 B.R. 806, 808 (Bankr.E.D.La.2000) (court may adopt a retroactive date in exceptional cases). The plain language of section 365 does not mandate that the court's order approving rejection of unexpired leases be a condition precedent to the effective date of the rejection. Further, nothing in the statute establishes the effective date of rejection.

Appellants' arguments to the contrary are not persuasive. Citing to *In re Swiss*

*Hot Dog Co.*, 72 B.R. 569 (D.Colo.1987), they contend that the law in this district compels a finding that rejection of leases may not be made retroactive. That case held that debtors cannot assume a lease under section 365 merely by their conduct but instead must file a motion and obtain a court order. "Assumption will be deemed an accomplished fact only upon order of the bankruptcy court resolving the motion." 72 B.R. at 574. *Swiss Hot Dog* did not involve the issue of retroactivity, and, accordingly, does not provide guidance for my decision here.

Appellants also contend that consideration of "notions of equity" regarding timing of lease rejections (for purposes of determining whether to select a retroactive rejection date) is contrary to the plain language of section 365 and improperly "injects the concept of 'benefit to the estate'" from section 503 (*see* discussion, below). Reply Brief at 13. They would place the burden on a debtor to act "expeditiously" to reject a lease, *id.* at 14, but

ignore the concerns of courts faced with delays caused by parties other than the debtor.[6]

Contrary to appellants' contentions, the "plain language" of section 365 does not prohibit selection of a retroactive rejection date. *In re Jamesway*, 179 B.R. at 37. Further, it is apparent from the cases addressing the equities of retroactivity in this context that the courts look to the conduct of the lessor and the debtor-lessee with respect to the property and do not apply the section 503 test of benefit to the estate. *See, e.g., O'Neil Theatres, Inc.*, 257 B.R. at 808 (making rejection date retroactive to date of filing bankruptcy petition, relying on fact that parties clearly acted to reject lease prior to filing date).

Finally, appellants cite to section 365(d)(10), governing unexpired leases of personal property. That subsection authorizes the court "after notice and a hearing and based on the equities of the case" to alter the trustee's obligations with respect to the personal property.[7] Arguing the

---

6. Appellants' position (that rejection of unexpired leases of nonresidential real property is effective only on the date of the court's order authorizing rejection) would, in some cases, lead to results inconsistent with the bankruptcy code's purposes of granting a debtor a fresh start or aiding its reorganization. For instance, where a trustee files a motion to reject leases simultaneously with the debtor's Chapter 11 filing but the court-for whatever reason-does not enter an order authorizing the rejection, the debtor will remain liable for the rents due during the sixty day period prior to automatic rejection. Indeed, unless the bankruptcy court may authorize rejection retroactive to an earlier date, the debtor will always be liable for obligations falling due during the notice period required by the bankruptcy rules.

I note that allowing a rejection order to be made effective as of the date the trustee (or debtor in possession) filed the motion to reject would do exactly what appellants ask-place the burden on the trustee/debtor to act expeditiously.

7. Section 365(d)(10) provides:

The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

doctrine of *expressio unius est exclusio alterius,* appellants asserted at oral argument that the absence of similar language in section 365(d)(3) precludes a holding that the bankruptcy court may rely on equity to permit retroactive rejection of unexpired leases of nonresidential real property.

Again, I disagree. The reference to equities in section 365(d)(10) is not expressed in the context of allowing retroactive rejection of leases of personal property. In addition, the issue of whether section 365 allows (or, at least, does not prohibit) the exercise of discretion in setting the effective date of rejection is a question of law, not equity. Equity may justify retroactive rejection if the law permits it.

I hold that, because section 365 does not, as a matter of law, prohibit selection of a retroactive date for rejection, the bankruptcy court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject. Given this conclusion, I now consider whether, based on the circumstances of this case, the bankruptcy court abused its discretion in making CCI's rejection of the leases at issue effective as of March 14, 2002, the date of its original motion to reject.

■ Precedent suggests that retroactive application of an order approving rejection of leases is the exception to the general rule that rejection is effective upon entry of the order. The court in *Jamesway Corp.,* for instance, affirmed a retroactive rejection solely because the lessor had caused the delay in the entry of the bankruptcy court's order approving the rejection.[8] 179 B.R. at 39. The court's ruling was narrow: "While it is unsettled

whether a bankruptcy court can authorize retroactive rejection without a strong reason, it can do so to avoid penalizing the debtor for an unnecessary delay caused by the creditor." *Id.* Similarly, the bankruptcy court in *O'Neil Theatres* stressed the exceptional nature of retroactive relief: "The court emphasizes that in most cases a lease will be considered rejected as of the date of entry of the order approving the rejection, and only in exceptional circumstances such as those presented here will the court adopt a retroactive date." 257 B.R. at 808.

Although I find that the circumstances of this case do not clearly rise to the level of those presented in *Jamesway* or *O'Neil Theatres,* I cannot conclude that the bankruptcy court abused its discretion by making CCI's rejection of the leases effective retroactive. The record from the hearing before the bankruptcy court reflects that CCI had not been in possession of the leased premises at issue since before (or shortly after) its Chapter 11 filing.

Accordingly, I will affirm the bankruptcy court's ruling granting the motion to reject the leases *nunc pro tunc* to March 14, 2002.

## 2. *Motion to Compel*

■ Following the bankruptcy court's order making the rejection of the leases retroactive to March 14, 2002, appellants filed a motion to reconsider in which they argued, *inter alia,* that they were entitled to payment of the monthly rents due March 1, 2002. Accepting the court's decision to apply a "performance" date approach to the February 2002 rents, appellants contended that CCI remained liable for the entire amounts of the March 2002 rents as post-petition, pre-rejection debts.

---

**8.** The bankruptcy court in *Jamesway* had made the rejection of the leases retroactive to the date the court would have approved the

rejection had it not been delayed in doing to by frivolous objections filed by the lessor. 179 B.R. at 39.

The bankruptcy court disagreed. It interpreted appellants' request for payment of the March 2002 rents as an application for administrative expenses pursuant to section 503(b) and denied the motion based on its finding that appellants had not shown benefit to the estate or other grounds entitling them to the rent payments.

The bankruptcy court relied on *In re Coal–X, Ltd.*, 103 B.R. 276, 280–81 (D.Utah 1986), *aff'd in part, rev'd in part*, 881 F.2d 865 (10th Cir.1989). In that case, the district court held that claims for post-petition rents were administrative claims against the estate to be allowed based on "the reasonable value of the debtor's actual use and occupancy of the premises during the administration of the estate." *Id.*

On appeal, appellants contend that *Coal–X* is not controlling because it arose under a prior version of section 365.

Section 365(d)(3) was enacted as part of the 1984 "shopping center" amendments to Title 11 (the Bankruptcy Amendments and Federal Judgeship Act of 1984). The section was intended to lessen problems created by a trustee's failure to pay rent pending a decision by a bankrupt tenant to assume or reject a lease. Under the amendment, the trustee (or, as here, the debtor in possession) would be required to perform the obligations under an unexpired lease prior to the assumption or rejection of the lease. *See* 130 Cong. Rec. S 8891, 8894–95 (daily ed. June 29, 1984) (comments of Sen. Hatch), *reprinted in* 1984 U.S. Cong. & Admin. News 590, 599 (quoted in Opening Brief at 15).

Before the 1984 amendments, post-petition rents were governed by section 503's provision for allowance of administrative claims to preserve the estate.[9] Under the prior law, claims for unpaid rent were subject to a determination that the expense benefitted the estate.

Appellants emphasize that the 1984 amendments changed the prior law, pointing out that section 365(d)(3) requires payment of lease obligations "notwithstanding" section 503(b)(1). They contend that the bankruptcy court erred in focusing on section 503 and in relying on *Coal–X* because the Chapter 11 petition in that case was filed before the effective date of the 1984 amendments.

I agree. Although the district court's decision in *Coal–X* does not expressly hold that it was governed by the pre-amendment law, it does refer to "the bankruptcy law applicable to this case" in its discussion of payment of post-petition rents and applies a section 503 standard of benefitting the estate. 103 B.R. at 280–81 ("Any claim for rent accruing postpetition under the bankruptcy law applicable to this case is an administrative claim against the estate, but only for the reasonable value of the debtor's actual use and occupancy of

---

9. Section 503(b) states, in relevant part:

 (b) After notice and a hearing, there shall be allowed administrative expenses, other that claims allowed under section 502(f) of this title, including—

 (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

 (B) any tax—

 (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or

 (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

 (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph[.]

§ 503(b)(1).

the premises during the administration of the estate").

The majority of courts to address the issue of post-petition (and pre-rejection) rents under section 365(d)(3) following the 1984 amendments have held that the "benefit" test of section 503(b)(1) no longer governs section 365(d)(3) claims. The Ninth Circuit has expressly rejected an argument that section 503 controls payment of rent under section 365(d): "[Such an argument] cannot be squared with the specific statutory direction that the obligations under section 365(d)(3) exist 'notwithstanding section 503(b)(1).'" *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401, 404 (9th Cir.1994) ("The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the 60–day period pending assumption or rejection") *See also In re Thinking Machines Corp.,* 67 F.3d at 1024 (section 365(d)(3) is a "marked departure" from section 503(b)(1)'s allowance only of costs necessary to the preservation of the estate); *In re Western Monetary Consultants,* 100 B.R. 545, 547 (Bankr.D.Colo.1989) ("Any necessity for showing the reasonableness of the rent has been completely abrogated by Section 365(d)(3)") (quotation omitted).

CCI does not address these cases in its response brief. Instead, it argues that appellants' interpretation of section 365(d)(3) grants nonresidential lessors a "super-priority" status and that, had this been Congress's intent in enacting the section, it would have done so expressly. CCI's case citations do not help its cause. *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969 (Bankr.E.D.Pa. 1987), for instance, states the majority view argued by appellants. CCI's other cases relied on *In re Orvco,* 95 B.R. 724 (9th Cir. BAP 1989), an opinion of the Ninth Circuit's Bankruptcy Appellate Panel which has since been abrogated by that Circuit's decision in *In re Pacific–Atlantic Trading Co.,* 27 F.3d at 404.

I conclude that the bankruptcy court erred in holding appellants to the requirements of section 503(b)(1) in making a claim for post-petition rents due March 1, 2002, prior to the date of rejection. An unresolved question, however, is whether rent should be prorated as of the date of rejection (accrual theory) or whether CCI should be liable for the whole month since the full rent was due on March 1, 2001, before the effective date of rejection (performance date theory).

Neither party has appealed the bankruptcy court's decision to apply a "performance date" approach to the February 2002 rents, but I will not interpret that silence as a stipulation that, because the performance date was March 1, 2002, prior to the retroactive rejection date, the entire rent amount is a post-petition, pre-rejection obligation. Indeed, such a result effectively moots at least part of the equity justification for the retroactivity decision. On remand, the parties should be given the opportunity of a hearing before the bankruptcy court on whether CCI's March 2002 rent obligation should be prorated to the date of rejection.

### Conclusion

Upon review of the record in this case, I conclude that, as a matter of law, the bankruptcy court was not prohibited from authorizing the rejection of the unexpired leases retroactive to the date CCI filed its original motion to reject. Based upon that conclusion, I find that Judge Brooks did not abuse his discretion in determining that retroactive application of the rejection was appropriate under the equities and circumstances of this case. I conclude, however, that the bankruptcy court erred

in applying a section 503 standard to appellants' request, in their motion for reconsideration, for payment of the March 1, 2002 rents.

Accordingly, it is ordered that the decision of the bankruptcy court is affirmed with regard to its June 24, 2002 order authorizing the rejection of the four unexpired leases at issue retroactive to March 14, 2002. The July 30, 2002 order denying appellants' motion for reconsideration is reversed, and the case is remanded to the bankruptcy court for proceedings consistent with this opinion.