
**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )   BAP No.   CC-13-1319-KiLaPa
                                    )
NEW MEATCO PROVISIONS, LLC,         )   Bk. No.   2:13-22155-PC
d/b/a KING SEAFOOD,                 )
                                    )
                  Debtor.           )
_____)
                                    )
BOYLE AVENUE PROPERTIES,            )
                                    )
                  Appellant,        )
                                    )
v.                                  )   **M E M O R A N D U M**[1]
                                    )
NEW MEATCO PROVISIONS, LLC          )
d/b/a KING SEAFOOD; OFFICIAL        )
COMMITTEE OF UNSECURED              )
CREDITORS,                          )
                                    )
                  Appellees.        )
_____)

Argued and Submitted on May 15, 2014,
at Pasadena, California

Filed - May 30, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

Appearances:     J. Scott Bovitz, Esq. of Bovitz & Spitzer argued
                 for appellant, Boyle Avenue Properties; Mette
                 Hedegaard Kurth, Esq. of Arent Fox LLP argued for
                 appellee, New Meatco Provisions, LLC.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: KIRSCHER, LATHAM[2] and PAPPAS, Bankruptcy Judges.

Appellant Boyle Avenue Properties ("Boyle"), former landlord of chapter 11[3] debtor New Meatco Provisions, LLC, d/b/a King Seafood ("New Meatco"), appeals an order approving New Meatco's motion to reject retroactively its unexpired nonresidential lease with Boyle.  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

### A.    Prepetition events

New Meatco is an importer and distributor of beef, poultry, pork and seafood in Southern and Central California.  Prior to bankruptcy, New Meatco conducted business at two leased facilities in Los Angeles.

On June 1, 2004, Boyle leased a 76,000 square foot industrial

---

[2] Hon. Christopher Latham, Bankruptcy Judge for the Southern District of California, sitting by designation.

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] New Meatco contends that Boyle's opening brief asserts "a myriad of new factual allegations" that were never presented to the bankruptcy court, namely citations to a proof of claim Boyle filed nearly two months after entry of the order on appeal.  The proof of claim submitted with Boyle's excerpts of record contains copies of the lease at issue and the sublease involving New Meatco's sublessee.  It is undisputed that copies of these documents were not before the bankruptcy court when it rendered its decision, and New Meatco asks that we disregard these new factual allegations on that basis.  See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001)("[E]vidence that was not before the lower court will not generally be considered on appeal.").  However, since the leases existed at the time of the hearing, were referenced in the parties' pleadings and were not disputed, we will consider the proof of claim to the extent of the lease exhibits only.  As to the other new factual allegations New Meatco disputes, we consider much of Boyle's contentions to be argument as opposed to "new facts."  However, to the extent any contentions are new factual allegations which New Meatco disputes, we have disregarded them.

-2-

building to New Meatco's predecessor, Meatco Provisions, Inc., located on Boyle Avenue (the "Boyle location"), which is the lease at issue in this appeal. In April 2011, the lease was assigned to debtor New Meatco (the "Boyle lease"). New Meatco's rent was approximately $36,000 per month.

After experiencing financial difficulty, New Meatco shut down its operations at the Boyle location in September 2012. It stopped paying rent to Boyle in November 2012.

In January 2013, and with Boyle's approval, New Meatco entered into a sublease with California Natural Food and Beverage ("California") for the entire Boyle location. The sublease was to commence on February 1, 2013. The monthly rent was $19,000, with a security deposit of $38,000 due upon execution of the sublease. California's last rent payment to New Meatco was in March 2013. New Meatco apparently never paid any of the rent or deposit funds that it collected from California to Boyle.

New Meatco's restructuring efforts ceased in April 2013, after Seafax Business Report — a leading credit reporting and collection agency for the North American food industry — changed New Meatco's credit rating from "inconclusive" to "cautionary status." Following this downgrade, New Meatco's major suppliers cut off further shipments of inventory to the company, leaving it unable to continue operations. New Meatco's perishable inventory and accounts receivable were sold in late April 2013.

**B. Postpetition events**

New Meatco filed a chapter 11 bankruptcy case on May 8, 2013. It intended to file a chapter 11 plan establishing a creditor's trust for the purpose of liquidating its litigation assets (some

$45 million in preference avoidance actions, plus an unknown amount in potential tort claims) and any other remnant assets in its estate.

On May 24, 2013, New Meatco filed its omnibus Motion for Order (A) Authorizing the Rejection of Certain Executory Contracts and Leases and the Abandonment of Personal Property under §§ 365 and 554, and (B) Establishing Rejection Procedures (the "Rejection Motion"). As for the Boyle lease, New Meatco contended that it had notified Boyle of its intention to surrender the premises prepetition, but did not explain how notice was given or by whom. New Meatco contended that immediate rejection of the Boyle lease was necessary because it had vacated and surrendered the premises prepetition, and because the Boyle lease provided no benefit to it or its estate due to California's nonpayment of rent. California was, however, still occupying the premises. New Meatco requested that the Boyle lease (and the related sublease to California) be rejected as of the date the Rejection Motion was filed and served to avoid further administrative expenses.

Only Boyle opposed the Rejection Motion. Boyle supported the rejection of the Boyle lease, but opposed the May 24 rejection date proposed by New Meatco. Boyle contended that the effective date for the rejection should be the date the bankruptcy court entered the order approving the Rejection Motion. While Boyle conceded that retroactive rejection of nonresidential leases was permissible under Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064 (9th Cir. 2004), it argued that New Meatco had not met its burden of proof to show that "exceptional circumstances" existed. Namely, New Meatco had not

-4-

vacated the Boyle location because its subtenant, California, still occupied the premises.

In reply, New Meatco argued that approving the rejection of the Boyle lease as of the date the bankruptcy court's order is entered would give Boyle a windfall administrative claim of up to $36,252 per month, particularly since New Meatco was not receiving any benefit from the Boyle lease. New Meatco argued that it had satisfied the four-part "exceptional circumstances" test in At Home, and therefore retroactive rejection was warranted: (1) it promptly filed the Rejection Motion, just sixteen days after the petition date; (2) it promptly set the motion for hearing; (3) it had vacated the premises prepetition and conveyed its intent to reject when it filed the Rejection Motion; and (4) Boyle's motive in seeking to delay rejection was solely to obtain a larger administrative rent claim. New Meatco conceded that it owed Boyle approximately $253,764 in prepetition rent. However, Boyle held a prepetition security deposit for approximately $534,236. As a result, its claim would likely be paid in full. Thus, argued New Meatco, Boyle had not shown that it would suffer any harm by rejection of the Boyle lease as of May 24, other than a reduction of its administrative claim. The Official Committee of Unsecured Creditors joined in New Meatco's reply.

At the hearing on the Rejection Motion, the bankruptcy court began by stating its tentative ruling on the record. Applying the four-part "exceptional circumstances" test set forth in At Home, the court determined that the factors weighed in favor of New Meatco.

-5-

> But on balance, and given those four factors, and the Ninth Circuit was fairly clear in <u>At Home</u>, that no one factor prevails over another factor. That weighing those four factors, they weigh in favor of the Debtor.

<u>Id.</u> at 5:15-19. Focusing primarily on the third factor, nonoccupancy by the debtor, counsel for Boyle argued that it weighed in favor of Boyle because New Meatco's nonpaying subtenant had failed to vacate the premises, which put the burden of regaining possession on Boyle. After hearing further argument from the parties, the bankruptcy court adopted its tentative ruling as its final ruling. Boyle was provided relief from the automatic stay so it could immediately file an unlawful detainer action against California.

On June 27, 2013, the bankruptcy court entered an order approving rejection of the Boyle lease retroactive to the date the Rejection Motion was filed. Boyle timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion when it determined that New Meatco had shown "exceptional circumstances" to approve rejection of the Boyle lease retroactively to the date the Rejection Motion was filed?

## IV. STANDARD OF REVIEW

We review for abuse of discretion a bankruptcy court's decision concerning retroactive relief. <u>In re At Home Corp.</u>, 392 F.3d at 1067; <u>Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. # 1 (In re Thinking Machs. Corp.)</u>, 67 F.3d 1021, 1028 (1st

-6-

Cir. 1995). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. Rejection of unexpired nonresidential leases**

Section 365(a) permits the trustee or debtor in possession, subject to court approval, to assume or reject unexpired leases. Section 365(d)(3)[5] allows rejection of unexpired nonresidential real property leases. It requires the trustee (or debtor in possession) to perform timely all obligations required under the lease, including the obligation to pay rent at the contract rate until the lease is rejected, and gives the lessor an administrative claim for such amounts. See § 365(d)(3); Tenucp Prop. LLC v. Riley (In re GCP CT Sch. Acquisition, LLC), 429 B.R. 817, 824 (1st Cir. BAP 2010). Section 365(d)(4)[6] requires the

---

[5] Section 365(d)(3) provides, in relevant part:

The trustee [or debtor in possession] shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . . .

[6] Section 365(d)(4) provides, in relevant part:

Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
    (i) the date that is 120 days after the date of the order for relief; or

continue...

-7-

trustee to decide whether to assume or reject the lease within 120 days after the entry of the order for relief. These provisions, commonly known as the "Shopping Center Amendments," were "added to the Code to 'alleviate the unique financial strains the Code placed upon the commercial lessor,' namely that the lessor was formerly unable to collect rent from the debtor-tenant while at the same time prevented from taking any action to re-let the premises" due to the automatic stay. In re GCP CT Sch. Acquisition, LLC, 429 B.R. at 825 (citations omitted). See In re At Home Corp., 392 F.3d at 1068, 1070 (purpose of Shopping Center Amendments was to remedy the "long-term vacancy" of leased premises during protracted bankruptcy proceedings).

"Because the effective date of rejection determines when the obligation to pay rent ceases (and, in turn, controls the time period for which the lessor is entitled to an administrative claim under § 365(d)(3)), it is important for courts to determine when a lease rejection takes effect." In re GCP CT Sch. Acquisition, LLC, 429 B.R. at 825.

**B.     The bankruptcy court did not abuse its discretion in approving retroactive rejection of the Boyle lease to the date the Rejection Motion was filed.**

Boyle does not challenge the bankruptcy court's decision allowing New Meatco to reject the Boyle lease, but only its conclusion that the rejection could and should apply retroactively to the Rejection Motion date given the circumstances of the case. The controlling authority on retroactive rejection is At Home,

---

[6]...continue
    (ii) the date of the entry of an order confirming a
    plan.

which Boyle concedes the bankruptcy court correctly identified.

In most cases, a lease will be considered rejected as of the date of the entry of the order approving the rejection. In re At Home Corp., 392 F.3d at 1072. In At Home, the debtor had leased two buildings and placed in escrow approximately $20 million to fund remodeling. Debtor intended to occupy the premises upon completion of the renovation. At the time debtor filed its chapter 11 petition, the renovation was virtually complete, but debtor had never occupied the leased buildings. On the day debtor filed for bankruptcy, the landlord converted more than $1 million remaining in the escrow account into rent. On that same day, debtor filed an emergency motion for an order authorizing rejection of the unexpired lease retroactively to the date the motion was filed. The landlord objected to the retroactive rejection. The bankruptcy court granted the motion to reject effective on the date the motion was filed, even though that date was before the landlord regained possession of the premises. Id. at 1066.

In affirming the bankruptcy court and the district court, the Ninth Circuit held that the bankruptcy court may, in "exceptional circumstances," approve retroactively the rejection of an unexpired nonresidential lease. Id. at 1065, 1071-72 (bankruptcy court in exercising its equitable powers under § 105(a) may approve retroactive rejection of a nonresidential lease when "necessary or appropriate to carry out the provisions of § 365(d)")(citing In re O'Neil Theatres, Inc., 257 B.R. 806, 808 (Bankr. E.D. La. 2000)). It further held that the retroactive date may be earlier than the date on which the landlord retakes

possession of the premises. Id. at 1065. This may include the date on which the debtor files the motion to reject. Id. at 1071-72.

In deciding whether retroactive rejection is warranted, the bankruptcy court should consider the following nonexclusive factors: (1) the immediate filing of the debtor's motion to reject the lease; (2) the debtor's prompt action setting the motion for hearing; (3) the vacancy of the leased premises; and (4) the landlord's motivation in opposing retroactive rejection of the lease to the motion filing date. Id. at 1072-75. As for the third factor, "most cases approving rejection of a lease retroactively to the motion date highlight the fact that the debtor has vacated the premises." Id. at 1074 (citing Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 137 (D. Colo. 2003)). In addition, courts "generally focus on whether the parties have facilitated or hindered the prompt return of the leased premises to the landlord when deciding whether to approve the rejection of the lease retroactive to an earlier date." Id. at 1070.

Boyle agreed with the bankruptcy court's ruling that factors 1, 2 and 4 had been met: New Meatco had promptly filed the Rejection Motion; it promptly set the matter for hearing once receiving Boyle's objection; and Boyle's motivation was to be paid its administrative rent claim. It does not dispute these factors on appeal. Boyle takes issue with the bankruptcy court's finding on the third factor — vacancy of the premises:

> THE COURT: The third factor is the critical factor here, whether the Debtor vacated the premises or was receiving some benefit from the premises at the time of the lease

-10-

rejection. According to the evidence, the Debtor vacated the premises in March of 2013, prior to the filing of the bankruptcy petition.

There is a subtenant, [California], which, according to the papers, still resides on the property. But [California], according to the declaration in support of the reply, is not making rental payments to the Debtor. The Debtor was not receiving any windfall or benefit from [California] at Boyle's expense as a result of remaining on the property.

According to the declaration of Mr. Schooler (phonetic), which is attached to the reply, the Debtor has not received rent from the subtenant since March 2013, which was prior to the filing of the bankruptcy petition. And it seems to the Court that the Debtor would be penalized with increased administrative expenses, and we're talking about one month here . . . when the Debtor has not received any rent since the filing of the petition, and did not receive any rent for at least two months prior to the filing of the petition. So, I-- this factor, in the Court's view, weighs, tilts in favor of the Debtor as well.

. . .

[T]he case boils down to whether or not the estate should incur the additional $36,252 in administrative expenses when it hasn't received any rent in conjunction with the sublease of the premises.

Hr'g Tr. (June 26, 2013) 4:8-5:9; 12:23-13:1. The bankruptcy court contrasted this case to In re Cafeteria Operators, LLP, 299 B.R. 384, 388-89 (Bankr. N.D. Tex. 2003). In Cafeteria Operators, the debtor had closed and surrendered about half of its leased locations to the landlord prepetition. For those leases, the bankruptcy court held that because debtor was not receiving any benefit from the properties, the equities favored granting retroactive rejection. Id. at 394. However, as to the other leases, the court denied retroactive rejection because those locations were occupied by subtenants who were making continuous rent payments to the debtor. Id. Taking into account that California had not been paying rent to New Meatco, the bankruptcy

-11-

court concluded, "[t]hat's not the case we have here." Hr'g Tr. (June 26, 2013) 13:2-9.

Boyle contends New Meatco did not meet its burden to show "exceptional circumstances" for retroactive rejection, and the bankruptcy court abused its discretion in finding that it had. Boyle argues that New Meatco did not act in good faith or make any effort to minimize Boyle's damages. New Meatco stopped paying rent in November 2012. Rather than vacating the Boyle location at that time and returning the premises to Boyle, it sublet the premises to a subtenant who failed to pay rent. Boyle contends that New Meatco took no steps to collect rent from or evict California, who was still occupying the premises at the time the Rejection Motion was filed, instead dumping the nonpaying subtenant on Boyle.

Boyle's arguments focus heavily on the fact that it was not in possession of the Boyle location prior to the time the Rejection Motion was filed. Boyle believes the third factor must be given the most weight, and here, it weighed in Boyle's favor. Therefore, argues Boyle, the bankruptcy court erred in finding otherwise. To support its argument, Boyle cites to In re Amber's Stores, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) and In re O'Neil Theatres, Inc., 257 B.R. at 808, cases where retroactive rejection was granted, but the debtor had either surrendered the premises or the landlord had gained control over the premises prepetition.

The Ninth Circuit rejected similar "possession" arguments made by the landlord in At Home. There, the landlord had argued that approving rejection of the leases retroactive to the motion filing date was an abuse of the bankruptcy court's equitable

-12-

powers because the debtor remained in possession of the leased premises on that date. 392 F.3d at 1071. In reviewing the legislative history and concluding that the purpose of the amendments to § 365(d) was to "hasten the trustee's decision to assume or reject a lease," the At Home court reasoned:

> The relevant provisions of § 365(d) do not even mention the term "possession," much less elevate it to a condition precedent to a bankruptcy court's exercise of its equitable powers. The legally operative event in § 365(d) is the debtor's or trustee's assumption or rejection of the lease, rather than the landlord's possession of the leased premises.
> . . .
> [Retroactive relief] would be impossible were we to adhere to a strict rule under which the landlord's regaining possession of the lease premises is a precondition to lease rejection.

392 F.3d at 1071-72. The court further rejected the landlord's argument that retroactive rejection should be precluded "when the landlord is involuntarily deprived of possession," as opposed to when it is deprived of possession due to its own malfeasance. Id. at 1072 (emphasis in the original). Thus, a bankruptcy court is not precluded from finding in favor of a debtor on the third At Home factor when the landlord is not in possession at the time the rejection motion is filed.

Although this case presents some unfavorable facts for New Meatco regarding the vacancy of the Boyle location and its efforts (or lack thereof) to return possession to Boyle, we cannot say on this record that the bankruptcy court's findings are illogical, implausible or without support. The bankruptcy court found it important that New Meatco had itself vacated the premises prepetition, that it was receiving no benefit from the Boyle location at Boyle's expense at the time it filed its Rejection

Motion (or even for months before filing for bankruptcy), and that it would be unfair to penalize New Meatco (i.e., its other creditors) with an additional month of administrative expenses when it was not receiving any rent from California.

This unfairness analysis leads to Boyle's other argument that the bankruptcy court erred by substituting its sense of fairness — that the estate should not incur additional administrative expenses — for the Ninth Circuit's "exceptional circumstances" benchmark. Although it is not entirely clear what Boyle means by this, it appears to be an argument that the bankruptcy court could not consider other factors besides the four set forth in At Home. While the Ninth Circuit considered only these four factors, it made clear that it was "eschew[ing] any attempt to spell out the range of circumstances that might justify the use of a bankruptcy court's equitable powers" to grant a retroactive rejection date, and that it was not "limit[ing] the factors a bankruptcy court may consider when balancing the equities in a particular case." Id. at 1075. We conclude that considering the lack of benefit to New Meatco, particularly California's nonpayment of rent, was not an abuse of the bankruptcy court's discretion.

What is problematic for Boyle's position is that no factor in the discretionary At Home test necessarily weighs more or prevails over another factor. The Ninth Circuit expressly declined to decide whether any one of the factors on which a bankruptcy court relies, standing alone, will justify an exercise of discretion. 392 F.3d at 1075. Thus, even if the bankruptcy court found in favor of New Meatco on only three of the factors, it could still

have approved retroactive rejection.[7]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[7] For example, in <u>W. Valley Child Crisis Ctr., Inc. v. Westfest, LLC</u>, 2010 WL 4716021, at *2 (D. Ariz. Nov. 15, 2010), the district court affirmed the bankruptcy court's decision to not grant retroactive relief, when the bankruptcy court determined that the only <u>At Home</u> factor met was vacancy of the premises. Debtor had surrendered the leased premises to the landlord prior to filing the rejection motion. If a landlord's possession is the driving factor for approving retroactive rejection as Boyle contends, the ruling in <u>W. Valley</u> would appear to be erroneous.

-15-